### ROGERS *v.* PALMER.

1. A., as attorney for B., procured a judgment by default in favor of the latter against C., of whose insolvency and intent to commit a fraud on the bankrupt law he had knowledge. *Held,* that that knowledge was imputable to B.

2. C. having, with intent to give a preference to B., contributed to the rendition of the judgment at an earlier day than without his aid it could have been rendered, an execution was sued out and levied upon his goods. *Held,* that he thereby procured them to be taken on legal process within the meaning of the thirty-fifth section of the Bankrupt Law of March 2, 1867 (14 Stat. 534), as modified by the act of June 22, 1874. 18 Stat., part 3, pp. 180, 181.

APPEAL from the Circuit Court of the United States for the District of Minnesota.

The facts are stated in the opinion of the court.

*Mr. Edward G. Rogers* for the appellant.
*Mr. Enoch Totten* and *Mr. Cushman K. Davis, contra.*·

MR. JUSTICE MILLER delivered the opinion of the court.

The complainant is assignee in bankruptcy of Andrew Palmer, Jr., son of the appellee.

The father having procured a judgment against his son in the District Court of Freeborn County, Minnesota, for the sum of $8,433, caused execution to be issued thereon and levied upon the stock of goods of the defendant, who was a merchant in business in the town of Albert Lea, in that county.

Within a few days thereafter, proceedings in bankruptcy were instituted against the son, and he was duly declared a bankrupt. His assignee brought this suit in chancery for the purpose of having the levy declared void as a fraud upon the Bankrupt Act, and the goods, or their proceeds, subjected to administration in the bankruptcy proceeding. After answer, considerable testimony was taken. The Circuit Court dismissed the bill, and he appealed.

The bankrupt was indebted to his father on three promissory notes of several years' standing, and long overdue, on which interest had been paid with tolerable regularity until a year before the bankruptcy. About that time, the father, a resident of Wisconsin, visited the son, who lived in Minnesota, and received a mortgage on some land, but not sufficient in value to secure the debt. In July, 1875, he again visited his son in Albert Lea, and not long afterwards sent the notes for collection to Lovely & Parker, attorneys of that place, who commenced suit by the issue of a summons Oct. 23, 1875, which was served the same day. An affidavit was made, November 5, in the case by Parker, one of the attorneys, on which an attachment was issued and levied on the entire stock of the defendant's goods. In this affidavit Parker stated, without qualification, that the defendant was about to dispose of his property with intent to delay and defraud his creditors.

By the course of procedure in the courts of Minnesota, the plaintiff in that suit was entitled to judgment on the 13th of the month, if no plea or answer was interposed; and none was filed by the defendant.

Two days before this time, however, other creditors of Palmer, hearing of the condition of affairs, came to look after their interests and to prevent this judgment. Before they could initiate proceedings in bankruptcy they filed a bill in equity in the State court, and procured an order enjoining the plaintiff and his attorneys from taking their default and judgment, on the ground that the proceeding was fraudulent and collusive between father and son. This injunction was issued on the 12th; but on the 13th, the first day on which a judgment by default could have been entered in the action at law, it was dissolved on the affidavit of Andrew Palmer, Jr., drawn up by one of the attorneys for his father, denying all the allegations of the bill, and stating that his father's debt was a just and true one, and was due and wholly unpaid to the amount stated in the complaint. Judgment was rendered immediately, and on the same day an execution was levied on the defendant's stock of goods.

In a very few days thereafter the debtor Palmer was duly declared a bankrupt. By agreement the goods were sold, and the money derived therefrom deposited in the bankrupt court, subject to the final decree in this suit, as they would have been if they had not been sold.

There is no question that at the commencement of the action by the father the son was insolvent.

There are many circumstances besides the affidavit made by the son to show that he and his father had a perfect understanding in regard to that suit. Among these are the visit of the father only a few months before it was commenced; the absence of any special reason for suing at that time after eight years' delay, and the giving shortly after of security by mortgage for the debt, though insufficient; the sending of the notes for suit to the attorneys who had been usually employed by the son; the son's moving, as soon as the goods were attached, his books and papers into the office of these attorneys, and his seeming full consultation with them throughout the whole proceeding.

When we come to add to these the voluntary affidavit of the defendant, on which alone the injunction was dissolved, and the father enabled to recover judgment, under which an

execution was issued and a lien secured on all the defendant's goods, we are satisfied that the son actively aided in securing this seizure of them, with a design to prevent the equal distribution of them among his creditors under the proceedings in bankruptcy, which he knew would be commenced in a few days.

Several of these creditors were present when the injunction was dissolved and the judgment rendered. The injunction, as the attorneys and the debtor Palmer knew, was obtained to restrain the prosecution of the action until they could apply to the court in bankruptcy. To delay the rendition of the judgment until the application could be made would be fatal to the preference of the father's debt; for by the bankrupt the attachment was dissolved when the son was adjudged a be krupt, and unless execution could be levied before that time the goods would pass to the assignee, relieved of any claim under the judgment.

Whether, therefore, the father should be paid in full to the exclusion of other creditors or not depended on the dissolution of that injunction, and that was obtained solely on the voluntary affidavit of the insolvent son.

We are satisfied that he procured this preference and this taking of his goods on execution with a purpose of defeating the operation of the bankrupt law, within the meaning of the act on that subject. Sect. 35 of Bankrupt Act.

But, in order that the assignee shall recover the value of the goods seized on execution, it is not alone sufficient that the bankrupt should have aided in procuring the seizure. It is also necessary that the creditor should have had reasonable cause to believe that the debtor was insolvent and should have known that a fraud on the Bankrupt Act was intended.

We think this is the result of sects. 35 and 39 of the original bankrupt law, as amended by the act of June 22, 1874, which changed the original act in important particulars, and which, so far as it may conflict with that act, or the revision, must be held to control them both. 18 Stat. part 3, pp. 180, 181.

This latter statute carefully introduces the word *know* instead of *reasonable ground to believe*, in regard to the purpose to commit a fraud on the act.

We have little difficulty in coming to the conclusion that the elder Palmer had reason to believe that his son was insolvent at the time judgment against him was taken and the execution levied. We have already given the reasons for this, to which may be added that his son swears that he wrote to his father, pending negotiation with his other creditors and before the judgment was taken, asking him to consent, with the other creditors, to accept a compromise of fifty per cent for his debts.

It is a little more difficult to say that the father *knew* that the goods were seized with intent to defraud the bankrupt law. Possibly at the moment of the seizure he did not know personally all that his attorneys and his son had done, nor all that they knew. It may be that he supposed his suit would proceed in regular order, without the aid of his son or any act on the part of his attorneys intended to evade the bankrupt law. He may not have known personally that other creditors were on the ground contesting his right to a judgment, and still others on the way to institute bankruptcy proceedings, which, if done before the goods were seized under his execution, would defeat his purpose of securing a prior lien.

But this cannot be said of the attorneys who represented him. One of them had, only a few days before, made oath that the son was about to dispose of his property to delay and defraud his creditors. This, if true, was certainly a fraud on the bankrupt law. Instead of instituting a proceeding in bankruptcy, this attorney swore out an attachment in favor of his client, which would be a fraud on the bankrupt law, by preventing the equal distribution of this debtor's property among his creditors.

These attorneys also procured the debtor to make the affidavit in the injunction suit, with the perfect knowledge that, if they thereby succeeded in dissolving it, their client would seize the goods, and make his debt in preference to all other creditors, though they knew that other creditors were on their way to St. Paul to initiate bankruptcy proceedings. They, therefore, knew and intended that their action in behalf of their client would work a fraud upon the bankrupt law.

Is this knowledge imputable to the appellee in this case?

In *Hoover* v. *West* (91 U. S. 308), a creditor had procured a confession of judgment and a levy on property of his debtor, who was declared a bankrupt within four months thereafter.

The creditor had sent his note to a collection agency in Philadelphia, which forwarded it to their corresponding attorney in Nebraska, where the judgment was taken. The creditor knew nothing of what was done until the money was made by sale of the goods, and had given no direction as to the mode of proceeding, and held no communication with his attorney. This court held that the attorney was the agent in the transaction of the collecting agency and not of the creditor, and that he could not be held to know what the attorney knew in regard to the insolvency of the debtor, and other matters in the case. Three of the judges dissented from this view. But an examination of the opinion will show that all were agreed that if the creditor had sent the note directly to the attorney, the latter would then have been the agent of the creditor, whose acts and whose knowledge, obtained in the course of the employment, would have been the acts and the knowledge of his principal. And such, we think, is the true rule of law.

That the attorneys of the elder Palmer and the son were aware of the insolvent condition of the latter, and were co-operating to have his property seized on execution before the bankrupt law could be enforced, and with intent to defeat its operation on the son's property, we think is quite clear. And this we understand to be a fraud upon the bankrupt law, where the debtor contributes actively to that end. *Wilson* v. *City Bank*, 17 Wall. 473 ; *Little* v. *Alexander*, 21 id. 500.

The result of these considerations is that the decree of the Circuit Court must be reversed, and a decree rendered for the complainant, in conformity to this opinion ; and it is

*So ordered.*

Mr. Justice Field dissented.