## STRICKLAND v. CAPITAL CITY MILLS.

1. NONSUIT—JURY—MASTER AND SERVANT.—Whether master discharged his duty to an inexperienced employee in this case by putting him in charge of a machine with uncased cogs and in not warning him of the danger, whether after knowledge he voluntarily assumed the risk, and whether his own want of care proximately contributed to his injury, were properly submitted to the jury.

*Wofford v. Clifton Cotton Mills*, 72 S. C., 346, *distinguished from this.*

2. ATTORNEYS—PRIVILEGED COMMUNICATIONS.—A CONTRACT between attorney and client as to the fee to be paid for professional services and the assignment of an interest in a judgment in payment of services rendered is not a privileged communication.

3. BANKRUPTCY.—NOTICE to an owner of an interest in a judgment of bankruptcy proceedings against the judgment debtor is not notice to the other co-owner.

4. IBID.—ATTORNEYS.—NOTICE to an attorney employed to represent a judgment creditor in an appeal from a judgment in a State Court is not such notice to the judgment creditor as will discharge the debt not scheduled by the bankrupt, the attorney not having been employed to represent the judgment in the bankrupt Court, or not assuming to exercise such authority.

Before J. P. CAREY, special Judge, Richland, May, 1905. Affirmed.

Action by Henry Strickland against Capital City Mills. From judgment for plaintiff, defendant appeals.

*Mr. R. W. Shand,* for appellant, cites: *As to duty of master as to obvious dangers in machinery:* 55 S. C., 483; 72 S. C., 346; 72 S. C., 411. *Assignment of interest in judgment to secure fee is not privileged communication:* 86 Am. Dec., 385; 12 Pick., 89; 14 Pick., 422; 3 Gilm., 308; 36 Cal., 490; 24 Ga., 463; 46 Ia., 140; 50 Am. Cen. Dig., 986; 15 La. Ann., 330; 3 Johns. Cas., 198; 23 Ency., 2 ed., 53, 62, 67, 74; 1 N. Y. Supp., 867; 54 S. C., 481; 26 S. C., 370; 47 S. C., 176; Weeks on Attys., secs. 151, 168. *Notice to Tompkins of bankrupt proceedings is notice to his client:* Bank. Act., sec. 17; 1 Beach Mod. Law Cont., secs. 668, 681; 21 Ency., 2 ed., 587; 2 Doug., 629; 26 S. C., 399; 26 S. C., 560; 2 Bay, 517; 1 Bail., 537; 20 Pick., 59; 2 Hill, N. Y., 461; Story Part., sec. 91; 1 Chit. Con., 11 Am. ed., 319; 12 East., 323; 1 M. & S., 259; Wale. Notice, sec. 751; 115 Mass., 40; 12 S. C., 509; 2 Hill, 461; 20 Pick., 59; 112 Fed. R., 662; 11 Wall., 367; 3 Ency., 2 ed., 320; 21 Ency., 2 ed., 587; Weeks on Attys., secs. 31, 33.

*Mr. Frank G. Tompkins,* contra, cites: *Debt is not discharged if there is no actual notice of bankrupt proceedings:*

6 Am. Bank. Rep., 430; 7 A. B. R., 222; 12 A. B. R., 691; 1 Hill, 184.

April 4, 1906. The opinion of the Court was delivered by

MR. JUSTICE JONES. The plaintiff brought this action March 8, 1902, to recover damages for injuries received by him while working as an employee on a picker machine in defendant's mills, on November 15, 1901, as the result of defendant's alleged negligence in providing unsafe machinery without adequate guards over exposed cog wheels, and in not warning plaintiff of the danger of the machine, of which he was ignorant. The defendant, by amended answer, pleaded general denial, assumption of risk and contributory negligence. Plaintiff recovered judgment on verdict for $1,500, entered November 21, 1903, but on appeal therefrom by defendant, judgment was reversed and new trial granted, the remittitur from this Court being filed December 16, 1904, 70 S. C., 211.

In the meantime, in April, 1904, pending said appeal in this Court, defendant was adjudged a bankrupt by the United States District Court for South Carolina, under the bankrupt act of Congress, and on June 6, 1904, was discharged, the creditors having agreed upon a composition. By supplemental answer this discharge was set up in bar on the second trial. The plaintiff again recovered a verdict for $1,500, and from the judgment thereon comes this appeal.

1. The first question raised is whether the Court erred in refusing to grant a nonsuit, it being contended by appellant that the evidence for plaintiff failed to show any negligence on the part of defendant, and having shown that the injury was due solely to the negligence of plaintiff in not avoiding a manifest danger.

The plaintiff while adjusting a lap on the picker machine had his sleeve caught by the cog wheel and his arm pulled under the cogs, lacerated and injured. The cog wheel was

unguarded, and there was some testimony in behalf of plaintiff that in cotton mill machinery the general rule with the best manufacturers is to have all parts with which an operative will come in contact covered with casing, including cog wheels. The plaintiff testified that he had only been operating a picker machine for two days previous to the day he was injured, that he had received no caution or warning concerning the danger of operating the machine, of which he was ignorant, that while he could have seen the cog wheels if he had looked, as a matter of fact he had not noticed them. It appears from the testimony offered in behalf of the defendant, which may be considered in determining whether there should be a reversal of nonsuit, that the cog wheel is located on the side of the picker machine, is about two inches in diameter, its cogs meshing in with the cogs of a larger covered wheel below and thus driving it, that it is located behind the gear casing, is not in a position of danger to a person in the usual position of feeding the machine, but, according to the testimony of E. W. Thomas, general manager of the Granby and Olympia Mills at Columbia, S. C., at f. 235, and the testimony of W. P. Hamrick, superintendent of the Capital City Mills, at f. 251, the duty of the operative would at times require him to go all around the machine. Moreover, it appears that, on motion of appellant's counsel and with consent of plaintiff's counsel, the jury were permitted to view the premises and inspect the machinery in question.

We cannot say as a matter of law that there should be a reversal in this case for failure to nonsuit. It was for the jury to say whether the defendant discharged its duty to supply its operatives with reasonably safe machinery. If the defendant was negligent in not properly guarding the machinery with which the operative would probably come in contact in the discharge of his duties, and in not warning him in his inexperience, then whether the plantiff, after knowledge, voluntarily assumed the risk in this case, or whether by his own want of care he proximately contributed

to bring about his injury, were, we think, under the circumstances of this case, properly referred to the jury. This case is distinguishable from the case of *Wofford* v. *Clifton Cotton Mills*, 72 S. C., 346. In that case plaintiff received injury by having his hand caught in the cog wheel of a speeder-frame while cleaning the floor beneath. The cog wheels were covered on top, but this covering did not extend to the floor. The plaintiff in that case had been working in the mill two years, saw the machine put up and it was his duty and habit to take the covering off and clean the cogs. The Court considered that the evidence admitted of no other conclusion than that the plaintiff in that case not only knew the nature of the machine but fully comprehended the danger of putting his hands under the moving cogs to clean the floor.

2. The next question is raised by the second and third exceptions, which assign error in refusing to allow F. G. Tompkins, Esq., attorney of record for plaintiff. to testify whether he had any assignment, contract, or agreement, whereby he owned an interest in the claim of Henry Strickland against Capital City Mills between April 1, 1904, and July 1, 1904, and in ruling out as a privileged communication a written paper, signed by plaintiff and produced by F. G. Tompkins, assigning to said F. G. Tompkins an interest in the judgment in this case entered November 5, 1903. The written instrument in question was dated November 5, 1903, was signed by Henry Strickland, and purported to assign to Frank G. Tompkins a specified per cent. of Strickland's interest in the judgment against Capital City Mills for legal services rendered therein. The Court ruled this evidence out as a privileged communication between attorney and client. This, we think, would be error in a case where such testimony is material to some issue therein.

The general rule excludes from evidence all confidential communications of a professional nature between attorney and client unless the client, for whose benefit the rule is .

established, waives the privilege. This is based upon a wise public policy which considers that the interests of soci-. ety are best promoted by inviting the utmost confidence on the part of the client in disclosing his secrets to his professional adviser under the pledge of the law that such confidence shall not be abused by permitting a disclosure of such communications. This rule, however, is subject to limitations and should not be extended beyond its legitimate scope and purposes. We see no reason why the contract between the client and attorney as to the fee to be paid for professional services and the assignment of an interest in a judgment recovered in payment of services rendered should fall within the rule of privileged communications. This is knowledge which is not *communicated* by the client to the attorney, but is knowledge of the attorney derived from his own act in creating the fact sought to be disclosed and not from a revelation of any secret of the client. The fee contract, whether regarded as made preliminary to the relation of attorney and client, or at the close of such relation in compensation for services rendered, or whether made during the existence of such relation, is really collateral to the professional relation, is not strictly a part of it, and has no bearing upon the merits of the matter, upon which professional aid was invoked. As to such a contract the parties ordinarily stand in adversary relation. In 23 Ency. of Law, 74, the doctrine is stated that there is no privilege as to the amount of the attorney's fee or the terms of payment, citing *Smithwick* v. *Evans,* 24 Ga., 462; *Moats* v. *Rymer,* 41 Am. Rep., 703; and at page 76, this same work states that there is no privilege where the attorney is himself a party to the transaction or agreement which he is called upon to disclose. See, also, note in 66 Am. St. Rep., 213, for a comprehensive statement of the general rule on this subject and its limitations and especially on pages 231 and 232. Then, in this case, the nature of the fact sought to be disclosed must be considered. The assignment was of an interest in a matter of record, which necessarily involved

the right of the assignee to place it with the judgment record as a protection to his interest therein, and this must be deemed to have been within the contemplation of the client. Furthermore, the assignment was made in the presence of a witness, A. F. Spigner. It appears that Mr. Spigner was also an attorney in the case associated with Mr. Tompkins. The fact that one of the attorneys was a witness to the instrument would undoubtedly render such attorney competent to testify as to its execution, consideration and the circumstances attending its execution in his presence. *Moffatt* v. *Hardin,* 22 S. C., 26; *Brazel* v. *Fair,* 26 S. C., 385, 2 S. E., 293; *Monaghan Company* v. *Dickson,* 39 S. C., 148, 17 S. E., 696. The same reason would render admissible the testimony of the attorney to whom and in whose presence the instrument was executed. In the case of *Stoney* v. *McNeill,* Harper, 557, an attorney was compelled to answer as to facts falling within his own knowledge derived from the acts of the client in his presence. The testimony sought to be excluded as a privileged communication in that case was that the bond in suit was delivered by the client to the attorney for suit indorsed in blank, and that such blank indorsement was filled out in the presence and by the advice of the attorney with an assignment from Henry to Stoney, the plaintiff. The issue was as to whether the bond was assigned to Stoney, plaintiff, by Henry, or whether Henry had assigned the bond to Brown who had discharged the defendant.

But granting that the testimony could not be regarded as being a privileged communication, the Court's ruling could not be deemed reversible error unless it appears that the testimony was relevant and material to some issue in the case. The object of defendant in seeking to introduce such testimony was to show that the attorney was part owner of the judgment and that notice to him of the bankruptcy proceedings would be notice to the plaintiff, joint owner of the judgment, so as to make the discharge in bankruptcy a bar to plaintiff's action. It is

admitted as a fact that F. G. Tompkins had actual knowledge of the bankruptcy proceedings, but the evidence was that Henry Strickland had no notice or actual knowledge thereof. Our inquiry for the present does not involve the question whether notice to Tompkins as attorney was notice to the plaintiff, his client, but the question is, whether notice to Tompkins as owner of an interest in the judgment was notice to the plaintiff as co-owner. We do not think it was. The relation between the parties as owners of the judgment was not like that of partners, joint contractors and the like, wherein notice to one may be deemed notice to the associates on the principle of agency. "In the absence of proof of partnership or agency, it appears to be a settled rule that notice to one of several purchasers taking title as joint tenants or tenants in common will not by mere force of their relationship operate as notice to the others." 23 Ency. of Law, 516; 21 Ency. of Law, 587; *Parker* v. *Kane,* 4 Wis., 1, 65 Am. Dec., 283; *Babcock* v. *Wells,* 25 R. I., 23, 105 Am. St. Rep., 853. This last case holds that notice to one of two mortgagees that the title of a mortgagor is subject to an outstanding equity is not notice to the other. Under this view the testimony was not material.

3. The remaining exceptions to the charge and refusals to charge raise the question, whether notice to F. G. Tompkins, attorney of record for the plaintiff throughout the litigation, of the adjudication in bankruptcy, was notice to plaintiff. Notwithstanding the fact that the original suit in this case was upon an unliquidated claim for damages for tort by negligence, and that the judgment rendered on the former trial was set aside and the claim restored to its original status on the appeal and motion of the bankrupt, made presumably with approval of the Federal Court, it is conceded for the purposes of this appeal that plaintiff's former judgment in this case was provable in bankruptcy. The question then is whether the defendant's discharge in bankruptcy is a bar to the present claim, assuming that the claim was a "provable debt."

Sec. 17 of the United States Bankruptcy Statute of July 1, 1898, provides:

"A discharge in bankruptcy shall relieve a bankrupt from all his provable debts except such as (1) are due as a tax levied by the United States, the State, county, district or municipality in which he resides; (2) are liabilities for obtaining property by false pretenses or false representations, or for wilful and malicious injuries to the person or property of another, or for alimony due, or to become due, or for maintenance or support of wife or child, or for seduction of an unmarried female, or for criminal conversation; (3) have not been duly scheduled in time for proof and allowance with the name of the creditor, if known to the bankrupt, unless such creditors had notice or actual knowledge of the proceedings in bankruptcy; or (4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."

The controversy is upon the question whether the case falls within the third exception above stated. It is an undisputed fact that plaintiff's claim was intentionally omitted from the schedule under the belief that it was not a fixed liability and that no notice was ever served upon Henry Strickland, and that he had no actual knowledge of the bankruptcy proceedings until after the bankrupt's discharge. It appears, however, that F. G. Tompkins, who acted as Strickland's attorney throughout the litigation, was informed of the bankruptcy proceedings and was present at the first meeting of the bankrupt creditors. Mr. Tompkins, however, testified that he was present merely as a spectator, did not in any way participate in the meeting and had no authority to represent Henry Strickland in the bankruptcy Court. Henry Strickland also testified that he had not employed Mr. Tompkins to represent him in the bankruptcy proceedings. No power of attorney was ever made or filed authorizing Mr. Tompkins to represent Mr. Strickland in this matter as is the usual procedure in Federal Courts, and it does not even appear that Mr. Tompkins is authorized to

practice in the Federal Circuit or District Courts. Rule 14, adopted by the Supreme Court of the United States as a general order in bankruptcy proceedings, provides: " * * Every party may appear and conduct the proceedings by attorney who shall be an attorney or counsellor authorized to practice in the Circuit or District Court. The name of the attorney or counsellor with his place of business shall be entered upon the docket with the date of entry. All papers or proceedings offered by an attorney to be filed shall be indorsed as above required, and orders granted on motion shall contain the name of the party or attorney making the motion. Notices and orders which are not by the act or by these general orders required to be served on the party personally may be served upon his attorney." Sec. 1 of said bankruptcy act, giving the meaning of terms used therein, declares that "creditor" shall include any one who owns a demand or claim provable in bankruptcy and may include his duly authorized agent, attorney or proxy. We conclude from the foregoing that an attorney at law cannot represent a creditor in bankruptcy proceedings unless he is duly authorized so to do, and there was no evidence that Mr. Tompkins had or assumed to exercise any such authority.

Then it remains to consider whether an attorney employed to represent the creditor in a suit on a claim in the State Court, by virtue of that relation, so represents the creditor with respect to that claim as that notice to him of the bankruptcy proceedings is notice to a duly authorized attorney in the sense of the bankruptcy statute so as to bind the creditor. We think not. Ordinarily the authority of the attorney ends when judgment is obtained and he can do no more than receive the money and acknowledge satisfaction. *Treasurers* v. *McDowell*, 1 Hill, 184. He cannot after judgment, without special authority, compromise his client's claim and enter into composition with the judgment debtor. Tompkins' employment to represent Strickland in the appeal taken by the defendant company authorized him to do

anything necessary or incidental to the conduct of said appeal in the State Court, but such employment gave Tompkins no authority to represent Strickland in the bankruptcy proceedings in the Federal Court. There is no doubt that the general rule is that notice to the attorney is notice to the client, but the knowledge of the attorney must be acquired while acting for the principal, and the information must relate to a matter within the scope of his agency, the theory of the law being that the agent is presumed to have communicated to his principal knowledge which it was his duty to have communicated and which it is reasonable to suppose he did actually communicate. *Akers* v. *Rowan,* 33 S. C., 473, 12 S. E., 165; *Raply* v. *Klugh,* 40 S. C., 137, 18 S. E., 680; *Knobelock* v. *Bank,* 50 S. C., 290, 27 S. E., 962; *Peeples* v. *Warren,* 51 S. C., 561, 29 S. E., 659; *Steinmeyer* v. *Steinmeyer,* 55 S. C., 29, 13 S. E., 15. It cannot be said that the bankruptcy proceedings was within the scope of Tompkins' agency, nor can it be said that it was the duty of Tompkins to inform Strickland of such proceedings, especially when it appears that the attorney for the petitioning creditors and the referee in bankruptcy, with knowledge of the pending appeal from the former judgment in this case, took no steps to have Strickland's name placed upon the schedule of creditors or to give him the notice which sec. 58 of the bankrupt act requires to be given to creditors. But, furthermore, we construe the provision in the act under consideration as including only cases where there was personal notice of actual knowledge of the bankruptcy proceedings on the part of the creditor, as distinguished from mere imputed or constructive notice or knowledge. It is not denied that if Tompkins had been duly authorized to represent Strickland in the bankruptcy proceedings that notice to Tompkins would be notice to Strickland, since by the terms of the statute a duly authorized attorney or proxy represents the creditor. But it is different when actual notice or actual knowledge is sought to be imputed to the creditor merely because of the knowl-

edge of an attorney who represents the creditor's claim in another Court. What the statute requires is actual notice or actual knowledge either by the creditor or his duly authorized agent in the bankruptcy proceedings. Collier on Bankruptcy, 172. Neither of these conditions exist in this case, as it is conceded that Strickland had no actual knowledge of the bankruptcy proceedings, and the finding of the jury under the charge given establishes that Tompkins had no authority to prove or collect the claim in question in the bankruptcy Court. In *Birkett* v. *Columbia Bank,* 195 U. S., 345, 350, the Court said: "Actual knowledge of the proceedings contemplated by the section is a knowledge in time to avail a creditor of the benefits of the law—in time to give him an equal opportunity with other creditors—not a knowledge that may come so late as to deprive him of participation in the administration of the affairs of the estate or to deprive him of dividends."

The exceptions are overruled, and the judgment of the Circuit Court is affirmed.