## In re MYRON M. NAVISON SHOE CO., Inc.

District Court, D. Massachusetts. June 25, 1929.

No. 41895.

Friedman, Atherton, King & Turner, of Boston, Mass., for petitioning creditor.

Robert G. Dodge and Horblit & Wasserman, all of Boston, Mass., for bankrupt.

MORTON, District Judge. ▇ This is an involuntary petition brought and pressed by a single creditor. The respondent answered that there were 12 or more creditors; and this is the only issue. It was referred to Referee Lincoln who, after full hearing has found in favor of the petitioner, i. e., that adjudication should be made. The evidence not being reported, the referee's findings are final unless they appear to be wrong on the face of the report.

The Navison Company was a wholesale dealer in shoes. All its capital stock was owned by Joseph Navison; his son M. M. Navison was the active manager of the company. In July, 1928, it made a common-law assignment to which several of the larger creditors assented. The petitioner, which had a claim of about $40,000 did not assent, and instituted the present proceedings.

In its answer the Navison Company alleged that on the date of the petition it was indebted to 29 persons. Eighteen of these were for small amounts ranging between 49 cents and $12.25, and arose out of claims on defective goods which had been returned by the buyers to the Navison Company. Of the other 11 the referee for various reasons disallowed 5, leaving 6 to be counted. After the filing of the petition Joseph Navison paid, or caused to be paid, in full the 18 small creditors above referred to; and he took assignments of their claims to himself or his nominee. Not counting the claims so purchased by Joseph Navison, there were at the date of hearing less than 12 creditors; with them there were more. The question is whether the purchased claims can be counted. ▇▇ It is settled in this circuit that the number of creditors is to be taken as of the date when the petition is filed. Moulton v. Coburn, 131 F. 201 (C. C. A. 1). By the Bankruptcy Act, §§ 59b, 59f, 11 USCA § 95(b)(f), other creditors may join a single petitioner; and by a decision of Judge Dodge in this district (In re Lewis F. Perry & Whitney Co., 172 F. 744) they may intervene at any time prior to the actual decision on the petition.

As has been said there were more than 12 creditors when the petition was filed; Joseph Navison's action in buying up the small claims did not alter that fact. There is no certainty that any of these small creditors would have joined the petitioner; the effect of what Navison did was to deprive it of any chance to persuade them to do so. The learned referee held that Navison's action estopped the respondent from counting these purchased claims, and therefore from showing that there were twelve or more creditors.

▇ The first point argued for the respondent is that Navison is not the alleged bankrupt, and his activities are not imputable to it. As above stated he owned all its capital stock; he elected its officers, who were in fact his employees; the earnings of the company and its net assets belonged to him. He paid face value for these claims against an insolvent debtor. No legitimate reason for his doing so has been or, I think, can be suggested. It is in my opinion too clear for argument that he bought them on behalf of his company to protect it against bankruptcy proceedings, and that his relationship to the respondent was of such character as to make his action attributable to it. While there is no explicit finding to this effect by the referee, his ruling on estoppel necessarily involves it.

The question then is whether, if the bankrupt itself had purchased these small claims, it would thereby lose its right to base a defense upon them. Navison's action was obviously part of a sharp and carefully considered scheme to prevent the adjudication of his company. In Leighton v. Kennedy, 129 F. 737 (C. C. A. 1st) there was an effort by the alleged bankrupt and the common-law assignee to arrange the facts so as to increase the number of creditors and thereby avoid the provisions of the Bankruptcy Act (11 USCA) relating to a petition by a single creditor. While the money which they used belonged to the estate, that fact does not appear to have been an important factor in the decision. The final result was put upon the ground that: "The subsequent assignments by him [the assignee] constituted an attempt to create artificially a new condition for the specific purpose, assented to by all involved, of defeating the carefully prepared scheme of the bankruptcy statutes with reference to the subject-matter which this proceeding concerns. An attempt to create such a condition, and thus by indirect methods to defeat the scheme of the statute, is unlawful and void, and so clearly so that we need not elaborate the proposition." Putnam J., 129 F. at page 741. In Re Burlington Malting Co. (D. C.) 109 F. 777, a petition by a single creditor was met, as here, by the answer that there were 12 or more creditors. The petition was later supported by the intervention of two creditors having small claims. Upon its being shown that they had been purchased by the original petitioner it was held that: "The procedure is an obvious subterfuge. * * * Petition * * * dismissed." In Stroheim v. Perry & Whitney Co., 175 F. 52 (C. C. A. 1st) there were two concededly good creditors. The question was as to the third. The claim on which he intervened had been owned by another creditor at the time when the petition was filed. The intervening creditor purchased it from the original owner after the filing of the petition. Held that the creditor would not be counted.

In the present case, as in those referred to, an attempt has been made on behalf of the respondent to arrange the facts so as to avoid the provisions of the Bankruptcy Act. If such conduct is unpermissible before the petition is filed, it certainly must be so afterwards. Moulton v. Coburn, supra. In Rogers v. Palmer, 102 U. S. 263, 26 L. Ed. 164, it is said of certain action by the defendant: "This, if true, was certainly a fraud on the bankrupt law. Instead of instituting a proceeding in bankruptcy, this attorney swore out an attachment in favor of his client, which would be a fraud on the bankrupt law, by preventing the equal distribution of this debtor's property among his creditors." Miller, J., at page 267 of 102 U. S. The legal concept which is referred to as fraud upon a statute is certainly difficult and perhaps impossible, of definition—as has been said of fraud generally, per Lindley, L. J., Allcard v. Skinner (1887) L. R. 36 Ch. 183; but as the case cited shows it is a recognized part of our law. It probably means a resort to unconscionable methods in order to evade or escape the liabilities which the statute imposes.

Generally speaking a person certainly has the right to arrange his affairs to his best advantage under the law as it stands. But this right is not wholly unlimited; and it is my impression that even under tax statutes courts have refused to recognize arrangements which, though literally outside the statute, were obviously mere subterfuges to escape it. The respondent's conduct in this case was throughout designed "to create artificially a new condition for the specific purpose * * * of defeating * * * the bankruptcy statutes." Leighton v. Kennedy, supra. It is settled that the party resorting to such conduct will not be permitted to take advantage of the new condition thus artificially created; and the principle on which these decisions rest is equally applicable where the effect of what was done was to hinder the opposite party in the successful prosecution of its petition. As the party is estopped from setting up the facts in one case, it should be in the other.

I do not see that the petitioner was at fault for alleging that there were less than 12 creditors. It had no certain knowledge on the point and was justified in viewing with suspicion information which it received from the debtor.

Let there be an order confirming the report and for adjudication.