WISE *v.* CURDES ET AL.

[No. 27,590.   Filed March 16, 1942.]

*S. K. Frankenstein*, of Fort Wayne, for appellant.

*Eggeman, Reed & Cleland* and *Martin P. Torborg*, all of Fort Wayne, for appellees.

RICHMAN, J.—Arnold G. W. Curdes (who will be referred to hereinafter as appellee) sued appellant Wise and his co-appellee Felger to enjoin the latter as sheriff from enforcing an execution on a judgment in favor of appellant against appellee. After a hearing an interlocutory order was entered granting a temporary injunction from which order this appeal is taken.

The following pertinent facts are shown by the evidence: Appellant and appellee had been associated in business together in Fort Wayne. They had a disagreement and appellant left the State. He employed Lake E. Rariden an attorney of Fort Wayne to collect a claim against appellee growing out of their former business relations. Judgment was taken thereon May 12, 1932, in the DeKalb Circuit Court and transcript thereof filed with the clerk of Allen Circuit Court by which the judgment became a lien on real estate in Allen County in which appellee had some interest.

In March, 1935, a certain lot in Ft. Wayne was released from the lien of the judgment by a "partial release" recorded on the judgment docket dated March 12, 1935, signed "James C. Wise, Lake E. Rariden Attorney" and acknowledged March 30, 1935, before a notary public, the acknowledgment clause stating, "Personally appeared James C. Wise by Lake E. Rariden attorney and acknowledged etc."

The judgment docket shows release similarly signed and acknowledged, dated July 16, 1935, releasing another lot from the judgment. A third lot was similarly released July 17, 1935, but without acknowledgment.

October 11, 1935, the receiver of the Old-First National Bank and Trust Co. paid Rariden $25 to release a fourth lot from appellant's judgment. On the judgment docket, the lot is similarly released, "James C. Wise by Lake E. Rariden, Atty." A quitclaim deed to the receiver for the same lot, executed by appellant and his wife October 28, 1935, was procured by Rariden and recorded.

December 11, 1936, the receiver paid Rariden $50 for another release from appellant which release was similarly executed.

Between October, 1935, and December, 1936, appellee on his voluntary petition was adjudicated a bankrupt. The first meeting of creditors was held June 4, 1936. Rariden was present, stated to appellee's attorney that he (Rariden) was there on the Wise claim and that it was apparent from the schedules and hearing that there were no assets out of which collection could be made, that he did not care to have a trustee appointed and that he would not object to appellee's discharge in bankruptcy.

In due course on September 8, 1936, appellee was discharged. In this case he bases his right to the injunction on the fact of such discharge as relieving him

from the payment of appellant's judgment. Appellant contends however that the judgment was improperly scheduled and that he had no notice or actual knowledge of the bankruptcy proceedings so that he may still enforce the judgment.

By § 7 of the Bankruptcy Act (11 U. S. C. A. ch. 3, § 25, p. 354) the bankrupt's schedule is required to contain "a list of his creditors, showing their residences, if known, if unknown, that fact to be stated . . ." Appellee's schedule complied with this statute except that appellant's residence was not stated and there was no alternative statement that such residence was unknown. The evidence herein warrants the inference and the court found that in fact appellee did not know where appellant then resided.

Section 17 of the Act (11 U. S. C. A. ch. 3, § 35, p. 150) provides that "A discharge in bankruptcy shall release a bankrupt from all his provable debts, except such as . . . (third) have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy."

We need not determine the effect of appellee's failure to state that appellant's residence was unknown if from the evidence it may reasonably be inferred that appellant was notified or had actual knowledge of the bankruptcy proceedings.

If Rariden had been the creditor instead of being his attorney this question would be simple, for the evidence above set forth shows that he knew of the proceedings in time to have proved appellant's claim which proof, by the way, would have been useless for there were no assets for general creditors. We think also that from this evidence the court may prop-

erly have concluded that Rariden was then employed as attorney for appellant and acting within the scope of his employment. The authority of an attorney employed to collect a claim is said to end when the claim is reduced to judgment, but this is not always so. From his acts in releasing lots from the lien of the judgment and procuring appellant's quitclaim deed and from his presence at the meeting of creditors and his statements then made, it may reasonably be inferred that he was authorized to collect as well as take the judgment and that he was acting for and in the interests of his client in the investigation of the possibility of such collection in the bankruptcy proceedings. Whether this was a new, or a continuation of the original, employment is immaterial.

In *Butler* v. *Knight*, 2 Law R. Ex. 109, as stated in Weeks on Attorneys at Law (2d ed. 1892) § 238, the court "admitted the general proposition that the force of an attorney's retainer is at an end, and his power to bind his client ceases, when judgment is recovered," but the court said: (Weeks, *supra*, p. 491.)

> " 'We are bound by authority to admit it as a technical rule, but we are equally bound not to extend that rule one hair's breadth, since its effect on transactions in the relation of attorney and client is directly opposed to the common action and understanding of mankind in such matters. To whom does it ever occur, except to a technical lawyer, that unless something further is done to reestablish the attorney's authority, it ceases at judgment, and that without new instructions the steps necessary to obtain the fruits of litigation cannot be taken? It would be very mischievous to hold, in any case where evidence existed of the relation of attorney and client having been continued or recreated, that the attorney had not authority to act according to the exigency of the case.' The authority may be continued by any acts showing the

client's intention that his attorney shall continue to act in that relation."

See also *State ex rel. Share* v. *Boyd* (1878), 63 Ind. 428; *Newman* v. *Kiser* (1891), 128 Ind. 258, 26 N. E. 1006; *Larkin* v. *Frazier* (1918), 224 N. Y. 421, 156 N. Y. S. 1130, 121 N. E. 105; *Conway County* v. *Little Rock and Fort Smith R. R. Co.* (1882), 39 Ark. 50.

It appears from the record that after December 11, 1936, and before the trial of this cause Rariden died. There is no contention that he was guilty of any fraud or misconduct in his relations with appellant. It may be assumed therefore, that he was acting within what he considered to be the scope of his duty to his client. In some of the cases above cited the statement is found that an attorney employed to collect a claim has no authority by virtue of that employment to release a judgment taken by him except upon payment of money. It seems to us the trial court was justified in assuming from the fact that the attorney did release the lien of the judgment as to several lots, some without payment of money, that his employment was broad enough for that purpose, particularly as coincidental with one of those releases he procured appellant's quitclaim deed to the lot. We find no evidence submitted by appellant denying Rariden's authority so to act. It is to be noted that one of the releases was procured about three months after the bankrupt's discharge.

Ordinarily the knowledge of an attorney gained while acting for a client and within the scope of his employment is deemed to be the knowledge of the client to whom it is presumed to have been imparted.

This rule was applied recently as to the particular section of the Bankruptcy Act here involved in *Katz* v. *Kowalsky* (1941), 296 Mich. 164, 170, 295 N. W. 600, from which we quote as follows:

"Were this strictly a common-law question, we would have no hesitation in ruling that the knowledge of Daniel, if obtained within the limits of authority delegated by his sister, must be deemed the knowledge of plaintiff. Ordinarily, where a client is represented by an attorney, knowledge acquired by the attorney while acting within the scope of his authority is, by fiction of law, the knowledge of the client. *Littauer* v. *Houck*, 92 Mich. 162 (31 Am. St. Rep. 572) ; *Security Trust Co.* v. *Tuller*, 243 Mich. 570; *Rogers* v. *Palmer*, 102 U. S. 263 (26 L. Ed. 164) ; *In re Locust Building Co.* (C. C. A.), 299 F. 756, certiorari denied 265 U. S. 590 (44 Sup. Ct. 635, 68 L. Ed. 1195). However, we are dealing here with the words 'notice or actual knowledge' as used in a specific statute. We need not inquire into whether the words of the statute have all of the connotations the terms usually bear in common-law jurisprudence, for reference to the defintions provided in the statute itself gives a complete answer to the problem. 11 USCA, § 1 (11), explains the construction to be given the word 'creditors,' 'unless the same be inconsistent with the context":

" ' "Creditor" shall include anyone who owns a debt, demand, or claim provable in bankruptcy, and may include his *duly authorized* agent, *attorney,* or proxy.'

"This definition includes an attorney at law. *In re Henschel*, 109 Fed. 861 (reversed on other grounds in 51 C. C. A. 277 [113 Fed. 443])". Thus, we think from a reading of the statute itself, notice or actual knowledge of a duly authorized attorney is the equivalent of notice to the creditor. See Gilbert's Collier on Bankruptcy, § 564, p. 377; 7 Remington on Bankruptcy (5th Ed.), § 3581; p. 845; *Keefauver* v. *Hevenor*, 163 App. Div. 531 (148 N. Y. Supp. 434) ; *Vaughn* v. *Irwin,* 49 Misc. 611 (96 N. Y. Supp. 742) ; *Vital* v. *Jandorf,* 126 Misc. 124 (212 N. Y. Supp. 548) ; *American Southern Trust Co.* v. *Vester,* 183 Ark. 9 (34 S. W. [2d] 747). Compare: *Lynch* v. *McKee* (Tex. Civ. App.), 214 S. W. 484; *Strickland* v. *Capital City Mills,* 74 S. C. 16 (54 S. E. 220, 7 L. R. A. [N. S.] 426) ; *Interstate Credit League* v. *Widdison,* 50 Idaho, 493 (297 Pac. 1106)."

The Michigan Supreme Court seems not to have been impressed by the construction placed on the words "notice and actual knowledge" in the Texas, ██ South Carolina and Idaho cases last cited. They give the word "actual" the same meaning as "personal" and instead of confining the adjective so construed to its place in modifying the word "knowledge" they carry it back and make it modify "notice" so that the phrase read as a whole is "personal notice and personal knowledge." We think the definition of "creditor" found in § 1 (11) of the statute precludes any such construction. If a creditor has a duly authorized attorney then notice to such attorney is notice to the creditor and actual knowledge of the attorney is the actual knowledge of the creditor. We see no occasion for reading the word "personal" into the act. In the New Merriam-Webster Dictionary (1942) "actual" is defined as "existing in act or reality, . . . real." Synonyms given are "genuine, positive, veritable, true, factual, tangible, practical, substantial." Antonyms are "unreal, imaginary, supposed, fictitious; apparent." All these exclude any inference that "actual" means "personal." Considering the above definition of "actual" it is difficult to ascribe to the two words "actual knowledge" any different meaning in this statute than would be obtained from the word "knowledge" standing alone.

Nor do we find in the words "duly authorized" modifying the words, "agent, attorney or proxy" any suggestion to the effect that the notice or knowledge ██ must be that of an attorney with written power of attorney expressly prepared for the specific purpose of appearing in the bankruptcy proceedings. The relation of attorney and client may be and usually is created without writing. The attorney is "duly authorized" if he has been directed to act for a client and is acting within the scope of the agency.

We are not required here to weigh the evidence. It is sufficient to sustain the decision if from the facts stated most favorably to appellee inferences may reasonably be drawn that will support the ultimate fact of notice or actual knowledge of appellant. We conclude that Rariden's knowledge of the bankruptcy obtained in time for him to attend the first meeting of creditors must be deemed to have been the knowledge of appellant for whom the attorney was then acting pursuant to and within the scope of his employment.

But appellant contends that all the evidence from which the court found such knowledge was erroneously admitted over his objection. By specifications 4 to 25 inclusive of the motion for new trial he attempts to raise this question. The grounds of objection do not appear in any of these specifications. This court is now thoroughly committed to the view that no question as to the admissibility of evidence is presented for review if the motion for a new trial fails to state the grounds of objection to the evidence. *Brown* v. *State* (1939), 216 Ind. 106, 23 N. E. (2d) 267; *Kimmick* v. *Linn* (1940), 217 Ind. 485, 29 N. E. (2d) 207.

The briefs disclose, however, that appellant claims such evidence was outside the issues. The complaint alleged that appellant "had actual notice of the filing of said (bankruptcy) proceedings and of the pendency of said proceedings." This allegation appellant thinks insufficient to warrant admission of testimony as to Rariden's knowledge and the imputation thereof to appellant. We do not think so. There may be a nicety of distinction between notice and knowledge. But here we do not think any such distinction should be made. One of the definitions of "notice" is "knowledge." Bouvier's Law Dictionary (Rawle's Third Revision 1914) p. 2368. Knowledge however obtained

is within the definition. If the language of a complaint enables "a person of common understanding to know what is intended," it is sufficient. § 2-1004, Burns' 1933, § 110, Baldwin's 1934. We would be placing too great a burden upon a plaintiff if we were to hold that this allegation did not sufficiently inform the defendant of the issue to be tried.

In this connection appellant also asserts that there is fatal variance between the pleading and proof. We do not think the issue was so narrow as to exclude the evidence. It was admitted and sustains the decision. If necessary the complaint may be deemed to be amended to conform to the proof. This is true particularly where, as in this case, there is no showing of such surprise as to handicap the defendant in marshalling his evidence to meet the case made by the plaintiff. See *The M. S. Huey Co.* v. *Johnston* (1905), 164 Ind. 489, 495, 73 N. E. 996; § 2-3231, Burns' 1933, § 505, Baldwin's 1934.

It must be remembered, too, that this was a hearing on an application for a temporary injunction to maintain the *status quo* until the cause could be heard on the merits. Indeed we would be justified in affirming the interlocutory order upon the authority of *Gagnon* v. *French Lick Springs Hotel Co.* (1904), 163 Ind. 687, 72 N. E. 849, 68 L. R. A. 175; *Tuf-Tread Corp.* v. *Kilborn* (1930), 202 Ind. 154, 172 N. E. 353, and similar cases, which hold that a temporary injunction may be granted if the trial "court finds upon the pleadings and evidence such a state of facts as makes the transaction a proper subject for investigation in a court of equity" and that only for abuse of discretion will his order made on such a finding be reversed.

But appellee urges that the procedure adopted by appellant below, namely, request for special findings

of fact and conclusions of law and filing motion for new trial, which are not usual `where there is a hearing on interlocutory orders, (See *Kist* v. *Coughlin, Tr.* [1936], 210 Ind. 622, 1 N. E. [2d] 602, 4 N. E. [2d] 533.) indicates that the parties treated the hearing on the application for a temporary injunction as a trial on the merits. This prompts appellee's request that we do likewise. There is no occasion, however, for our converting an appeal from an interlocutory order into an appeal as from a final judgment. We have gone far enough in deciding questions we might have avoided but which the record and briefs have sufficiently presented. While this opinion may be determinative of controlling issues in the litigation, we have performed our present duty in affirming the order.

Order affirmed.

NOTE.—Reported in 40 N. E. (2d) 122.