In the Matter of Purvis FULTON, Individually and d/b/a Fulton Fire Repair and Construction Company, Bankrupt.

PURE IN HEART BAPTIST CHURCH, a Michigan Ecclesiastical Non-Profit Corporation, Plaintiff,

v.

Purvis FULTON, Individually and d/b/a Fulton Fire Repair and Construction Company, Defendant.

Bankruptcy No. 78–92458–B.

United States Bankruptcy Court, E. D. Michigan.

April 21, 1980.

Small, Oakes, Vosko & Clark, P. C. by Irving H. Small, Southfield, Mich., for plaintiff.

Lampert, Fried & Levitt by Michael A. Lewis, Birmingham, Mich., for defendant.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

This proceeding involves an application by a creditor seeking authority to file a late complaint to except its debt from discharge under Section 17a(2) of the Bankruptcy Act of 1898, as amended.

Purvis Fulton, individually and d/b/a Fulton Fire Repair and Construction Company (hereinafter referred to as the "bankrupt"), filed a voluntary petition in bankruptcy on September 29, 1978. Creditors were informed that the first meeting of creditors was to be held on October 31,

1978, and that complaints to determine the dischargeability of debts claimed to be non-dischargeable under Section 17a(2), (4) and (8) of the Bankruptcy Act were required to be filed by January 2, 1979.

On November 30, 1978, the law firm of Small, Oakes, Vosko, Clark & Meyer, P.C. (hereinafter referred to as the "Small-Oakes firm") filed an action on behalf of the Pure in Heart Baptist Church (hereinafter referred to as the "Church") in Wayne County Circuit Court against the bankrupt to recover the sum of $21,573.12 for breach of contract, and to set aside a mechanic's lien filed by the bankrupt against the Church's property. The Church was not listed as a creditor by the bankrupt in his schedules.[1] Counsel for the bankrupt, therefore, after receiving notice of the state court action, filed an application to amend the bankrupt's schedules to add the Church as a creditor and to stay the state court proceeding. On December 12, 1978, this court entered orders authorizing the amendment and enjoining the Church from proceeding with the state court suit. The order authorizing the amendment of the schedules provided that the order was to be served on the Church. On the same date, counsel for the bankrupt telephoned the Small-Oakes firm and advised Mr. Oakes of that firm that the orders authorizing the amendment of the bankrupt's schedules to add the Church as a creditor and staying the Church's state court action, had been entered, and by a letter addressed to Mr. Oakes, confirmed the aforementioned telephone conversation and enclosed true copies of the orders. The Church, however, was not informed by any member of the Small-Oakes firm that the bankrupt had filed the petition in bankruptcy until sometime late in April of 1979. A complaint to except the Church's debt for discharge was not filed by January 2, 1979.

On May 22, 1979, Mr. Small of the Small-Oakes firm filed a motion on behalf of the Church requesting an extension of time

---

1. The bankrupt apparently was under the impression that the Church was indebted to him and listed as an asset a claim against the Church.

within which to file a Section 17a(2) complaint to except the Church's debt from discharge.[2]

In support of the motion, Mr. Small contends that only he was retained to represent the Church in the state court proceeding and, therefore, service of process upon Mr. Oakes was of no effect; that he had not been retained to represent the Church in the bankruptcy proceeding and, therefore, any knowledge that he obtained concerning the bankruptcy proceeding in the course of his employment by the Church in the state court action could not be imputed to the Church, and that, in any event, he should be permitted to file a late complaint to except the Church's debt from discharge because of excusable neglect. Each of these arguments will be considered separately.

■ An issue not raised by the parties must first be considered. Rule 409(a)(2) of the Rules of Bankruptcy Procedure requires that the court enter an order fixing a time of "not less than 30 days nor more than 90 days after the first date set for the first meeting of creditors . . ." for the filing of complaints to determine the dischargeability of debts alleged to be nondischargeable, pursuant to Section 17a(2), (4) and (8) of the Act. While creditors were informed that Section 17a(2), (4) and (8) complaints were to be filed by January 2, 1979, an order to that effect was not entered and the parties were so advised. When informed by the court of this inadvertent omission, counsel for the Church additionally asserted that the court must now enter the order required by Rule 409(a)(2) and that the Church may file its Section 17a(2) complaint within the time to be fixed by this order. This argument has no merit. The Bankruptcy Act and accompanying Rules of Bankruptcy Procedure contemplate that there be an early determination of the bankrupt's right to discharge

and the dischargeability status of debts alleged to be nondischargeable under Section 17a(2), (4) and (8), which comprise the bulk of nondischargeability litigation. The time limits within which objections to discharge and complaints to determine the dischargeability status of debts are to be filed, are imposed to insure early resolution of such questions so that the debtor will be assured a realistic opportunity for rehabilitation. Pursuant to Rule 409(a)(2), the court has discretion to fix a time within which Section 17a(2), (4) and (8) complaints must be filed, but the court may not fix a time more than 90 days after the first date set for the first meeting of creditors.[3] Failure of the court to enter an order pursuant to Rule 409(a)(2) does not serve to enlarge the time for filing nondischargeability complaints beyond the limits authorized by the rule. Creditors, therefore, whether or not an order has been entered by the court, must file nondischargeability complaints at the latest, within 90 days after the first date set for the first meeting of creditors. To hold otherwise, would unduly prejudice the bankrupt through no fault of his own. Accordingly, while the Church was not required to file a Section 17a(2) complaint by January 2, 1979, it was required to do so by January 31, 1979.

It is necessary, therefore, to now consider the issues originally raised by the Church.

■ Bankruptcy Rule 110 permits a bankrupt to amend his schedules to add creditors as a matter of course at any time before the case is closed, and requires that the court "give notice of the amendment to such persons as it may designate." This rule recognizes that a debtor may omit creditors from his schedules and permits him to amend his schedules to add such creditors, and also assures that such creditors will obtain knowledge of the proceeding in time to permit them to protect what-

---

**2.** The motion is denominated an "Application of Motion for Extension of Time to Apply for Reconsideration." An amended motion similarly denominated was also filed. The amended motion merely added grounds not relied upon in the original motion.

**3.** Section 409(a)(2) also permits the court to fix the time for filing such complaints as early as the first date set for the first meeting of creditors, if the case is likely to be a no-asset case and notice to this effect is given to creditors.

ever rights are accorded them by the Bankruptcy Act. A creditor who does not have an opportunity to file a timely complaint to have the dischargeability status of his debt determined, is obviously deprived of an opportunity to avail himself of a substantial right accorded him by the Act. Therefore, if the Church did not obtain knowledge of the bankruptcy proceeding so as to enable it to file a complaint to except its debt from discharge by January 31, 1979, it should be permitted to file a late complaint. *Birkett v. Columbia Bank*, 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231 (1904); *In re Capshaw*, 2 B.C.D. 1659 (E.D.Va.1977); *In re Snyder*, 2 B.C.D. 1554 (E.D.Penn.1976); *In re Daniels*, 2 B.C.D. 526 (Or.1976); *In re Keenan*, 1 B.C.D. 238 (E.D.Wis.1974). The initial question to be decided, therefore, is: When did the Church acquire knowledge of the bankruptcy proceeding? Did it obtain this knowledge when Mr. Oakes of the Small-Oakes firm was informed that the order authorizing the amendment of schedules to add the Church as a creditor and the order staying the state court proceeding instituted by the Church had been entered, or when this knowledge was actually conveyed to the Church by its attorneys in April of 1979? Although representatives of the Church may have conferred only with Mr. Small, the state court action was filed, as previously indicated, by the Small-Oakes firm. Counsel for the bankrupt, therefore, had every right to assume that the law firm represented the Church in such action. Knowledge acquired by one member of a firm relating to a matter for which the firm was retained is imputed to all the other members of the firm. *Buder v. Denver National Bank*, 151 F.2d 520 (8th Cir. 1945); *Wittenbrock v. Parker*, 102 Cal. 93, 36 P. 374 (1894). All members of the Small-Oakes firm, therefore, acquired knowledge of the order authorizing the amendment of the bankrupt's schedules to add the Church as a creditor and the order staying the state court proceeding on December 12, 1978.

■ However, the question remains whether the law firm was authorized to accept service for the Church in the bankruptcy proceeding. An attorney or law firm is not authorized to accept service on behalf of a client in a given case merely because the attorney or law firm may represent that client in completely unrelated litigation. *Russ v. Russ*, 68 Cal.App.2d 400, 156 P.2d 767 (1945). It is necessary to establish that the attorney or law firm was authorized, either expressly or impliedly, to receive service of process for the client with respect to the case in which service is in issue. *United States v. Bosurgi*, 343 F.Supp. 815 (S.D.N.Y.1972); *United States v. Marple Community Record, Inc.*, 335 F.Supp. 95 (E.D.Pa.1971); *Christensson v. Hogdal*, 91 U.S.App.D.C. 251, 199 F.2d 402 (1952). The Small-Oakes firm had not been retained to represent the Church in the bankruptcy proceeding as of December 12, 1978 and, therefore, it is necessary to determine whether the law firm was impliedly authorized to receive service of process in that proceeding for the Church.

■ The Small-Oakes firm, when it acquired knowledge that Purvis Fulton had filed a petition in bankruptcy, was obligated to determine what action to take to protect its client's interests. It had to decide whether to move to vacate the stay, whether to file a claim in the bankruptcy proceeding and to determine whether grounds existed for either objecting to the discharge of the bankrupt or for instituting an action to except its client's debt from discharge. It is readily evident, therefore, that the institution of a bankruptcy proceeding materially affects the rights of a creditor who has an action to recover property pending against the bankrupt. For this reason, it has generally been held that an attorney who represents a client in an action affected by a bankruptcy proceeding, is impliedly authorized to represent that client in the bankruptcy proceeding and, therefore, notice to the attorney of matters relating to the bankruptcy proceeding constitutes notice to the client even though the attorney was not expressly retained to represent the client in such proceeding. *United States v. Bosurgi, supra*; *Wise v. Curdes*, 219 Ind. 606, 40 N.E.2d 122 (1942); *Katz v. Kowalsky*, 296 Mich. 164, 295 N.W. 600

(1941), and *American Southern Trust Company v. Vester*, 183 Ark. 9, 34 S.W.2d 747 (1931). The knowledge of the bankruptcy proceeding acquired by the law firm on December 12, 1978 must, therefore, be imputed to the Church as of that date. The fact that the law firm did not communicate this knowledge to the Church is immaterial. *Roberts v. Metropolitan Life Ins. Co.*, 94 F.2d 277 (7th Cir. 1938). An attorney "is conclusively presumed to have informed his client of all material facts which the attorney acquires knowledge of, and which affect the client's rights, while the attorney is acting in the course of his employment and within the scope of his authority." *In re Locust Bldg. Co.*, 299 F. 756, 769 (2d Cir. 1924). Service upon the law firm of the orders amending the schedules and staying the state court proceeding satisfied Rule 110 of the Rules of Bankruptcy Procedure. In fact, it was service that would seem to best insure that the Church's interests would be protected. *United States v. Bosurgi, supra.*

In support of its position that service upon an attorney for a creditor in a state court action does not constitute service upon the creditor for the purpose of the bankruptcy proceeding, the Church relies upon *Continental Purchasing Co., Inc. v. Norelli*, 133 N.J.L. 550, 45 A.2d 310 (1946); *Interstate Credit League v. Widdison*, 50 Idaho 493, 297 P. 1106 (1931); *Vital v. Jandorf*, 126 Misc. 124, 212 N.Y.S. 548 (1925), and *Strickland v. Capital City Mills*, 74 S.C. 16, 54 S.E. 220 (1906). *Continental Purchasing Co., Inc., Vital*, and *Strickland* are clearly distinguishable. In *Continental Purchasing Co., Inc.*, the issue of whether service upon an attorney constituted service upon his client whom he did not represent in the bankruptcy proceeding, was never reached. The court merely determined that the bankrupt did not serve the order amending his schedules on either the creditor or any of the attorneys who had, at various times, represented the creditor. In *Strickland* and *Vital*, unlike the circum-

stances here presented, the creditor's claim had been reduced to judgment prior to filing of the bankruptcy petition, and the court held that the entry of judgment terminated counsel's representation of the creditor.[4] *Interstate Credit League* does hold that unless an attorney represents the creditor in the bankruptcy proceeding, personal service of the order amending schedules upon a creditor is necessary to establish that the creditor had notice or knowledge of the bankruptcy proceeding. However, the case is not persuasive.

In light of this court's finding that the law firm's knowledge of the bankruptcy proceeding is to be imputed to the Church, it is necessary to determine whether the Church should be permitted to file a late complaint because of excusable neglect.

When the Bankruptcy Rules or a court order require that an action be taken within a specified time and such action is not taken within that time, the court, for cause shown, may extend the time to "permit the act to be done where the failure to act was the result of excusable neglect." Rule 906(b)(2). The crucial question, therefore, becomes whether the facts here presented warrant a finding of excusable neglect.

Mr. Small contends that he was unable to file a timely nondischargeability complaint for the Church because he was on vacation in Florida from approximately December 15, 1978 through late April of 1979, except for two (2) weeks in March of 1979. His absence from the office for this period, he concludes, justifies invoking Rule 906(b)(2). Excusable neglect, as used in Rule 906(b)(2), has been held to mean, "the failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform." *Beneficial Finance Co. v. Manning*, 4 B.C.D. 304, 305 (D.Conn.1974). Excusable neglect "requires both a demonstration of good faith by the parties seeking the enlargement and also it must appear

---

4. Actually, it is questionable whether the mere entry of a judgment necessarily terminates the attorney's representation of a client.

that there was a reasonable basis for not complying within the specified period." *In re Four Seasons Securities Laws Litigation*, 493 F.2d 1288, 1290 (10th Cir. 1974). The failure of an attorney to perform a required act within a specified time, because the attorney is on vacation or is absent from the jurisdiction for other personal or business reasons, are not sufficient grounds to justify a finding of excusable neglect. *Smith v. Stone*, 308 F.2d 15 (9th Cir. 1962).

> "To permit counsel to absent themselves from attendance on court to look after their personal business, without leave of absence and without legal or excusable grounds, would, if followed generally, prevent the transaction of any business on (sic) the trial of any cases, civil or criminal." *Bramlett v. Ford*, 41 Ga.App. 448, 449, 153 S.E. 369, 370 (1930).

An attorney who leaves the state for either personal or business reasons, has a duty to see to it that the affairs of his clients will be taken care of during his absence. In fact, the record establishes that Mr. Small did arrange to have an associate handle his cases in his absence.[5] The law firm acquired knowledge of the bankruptcy proceeding on December 12, 1978, three (3) days before Mr. Small left for Florida. Mr. Small, or any other member of the law firm, had only to obtain an ex parte order extending the time to file a nondischargeability complaint to give him an opportunity to examine the client's claim and to determine whether the facts justified the filing of such a complaint. This was not done. There obviously was neglect, but it was not excusable. *Cline v. Hoogland*, 518 F.2d 776 (8th Cir. 1975).

An appropriate order to be submitted.

---

**5.** Mr. Small testified that Michael Goldman, who was associated with the Small-Oakes firm, was to perform the necessary services for his clients, including the Church, while he was out of town and, in fact, various pleadings and letters dealing with the state court action and with the motion to extend the time for filing a nondischargeability complaint bear Mr. Goldman's signature.