YELLOW CAB COMPANY *v.* KRUSZYNSKI,

[No. 14,848. Filed May 28, 1935. Rehearing denied October 18, 1935. Transfer denied December 20, 1935.]

188

*Vitus G. Jones, Roland Obenchain, Paul M. Butler* and *Francis Jones,* for appellant.

*Chester L. Du Comb, Clifford V. Du Comb* and *John W. Kitch,* for appellee.

BRIDWELL, J.—Appellee, while riding as a passenger for hire in an automobile cab operated by appellant through one of its servants, received personal injuries when the cab in which she was riding and another automobile collided on the intersection of two streets in the city of South Bend, Indiana, the automobile cab continuing to proceed, after the impact, through said intersection and upon and over the curb of one of the streets and along an adjacent sidewalk until it ran into a tree with such force as to partly uproot the same.

Appellee brought this action for damages charging appellant with negligence causing her injuries. Appellant filed an answer of general denial to the complaint. The cause was tried to a jury which returned a verdict for appellee in the sum of $7,000. In due course appellant filed its motion for a new trial, which was overruled, and appellant excepted. Judgment was rendered on the verdict and this appeal perfected, the sole error

assigned being that the court erred in overruling appellant's motion for a new trial.

Among the allegations of the complaint is one that said automobile cab was being driven and operated by Fred Bills, chauffeur, agent, and servant of appellant, and the complaint alleges four specific acts of negligence as follows:

1. "That at the time and place of said collision and immediately prior thereto, on approaching the intersection of Lafayette Boulevard and Western Avenue said Fred Bills was driving and operating the automobile cab of said defendant at a speed greater than was reasonable or prudent, having regard to the width of the highway . . . the density of the traffic, the condition of the weather, which was cloudy and rainy, the use of the highway, which was wet and slippery and so as to endanger the life and limb of this plaintiff, to wit: Forty (40) miles per hour. That the place where said collision occurred was in a residence portion of the city of South Bend, Indiana.

2. "That at the time and place of said collision and immediately prior thereto, the said Fred Bills while so driving and operating the automobile cab of the defendant as aforesaid, on approaching the northwest corner of said intersection where his view was obstructed by a three (3) story building, carelessly and negligently failed to slow down the speed of said automobile cab and have the same under control and give a timely signal with a bell, horn or other device for signaling.

3. "That at the time and place of said collision and immediately prior thereto, the said Fred Bills while so driving and operating the automobile cab of defendant on approaching the intersection of Lafayette Boulevard and Western Avenue, failed to keep a lookout for motor vehicles approaching from his right on said Western Avenue, and especially the automobile with which he collided as aforesaid.

4. "That at the time and place of said collision and immediately prior thereto the said Fred Bills while driving and operating the automobile cab of defendant, on arriving at the intersection of said Lafayette Boulevard and Western Avenue, care-

lessly and negligently failed to stop or slow down the speed of said automobile cab and give the right of way to an automobile approaching said intersection from the west and to the right of the driver of defendant's automobile cab."

The causes stated in the motion for a new trial as reasons why same should be granted, that are not waived by failure to present same under the heading of "Propositions and Authorities" in appellant's brief, are: That the verdict of the jury is contrary to law; error in the exclusion of certain offered evidence; error in the admission of evidence over appellant's objection; that the damages assessed by the jury are excessive; that the court erred in refusing to withdraw from the consideration of the jury each the second and third specification of negligence; error in the giving of each of certain instructions, and in refusing to give each of certain instructions tendered by appellant.

Appellant makes no contention that the evidence is insufficient to sustain a verdict for appellee, but does assert that the damages awarded are excessive and that errors of law occurring at the trial of the cause were prejudicial to it and constitute reversible error.

Among the alleged errors presented and relied upon for reversal is the overruling of appellant's motion made at the close of all the evidence to withdraw from the consideration of the jury each the second and third specifications of negligence. In addition to reserving an exception to the court's ruling on this motion, appellant also tendered to the court its instructions numbered 12 and 13, whereby the court was again requested to take such action. Each of these instructions, number 12 relating to the second specification of negligence and number 13 to the third, was refused and proper exception to each of the rulings taken. The same rule is applicable here as would apply if the complaint contained but one charge of negligence, and ap-

pellant had requested a peremptory instruction directing a verdict in its favor. In determining whether the court erred in either of its rulings above mentioned, we consider only that evidence favorable to appellee. *Hamble* v. *Brandt* (1934), 98 Ind. App. 399, 189 N. E. 533; *Tarnowski* v. *Lake Shore, etc., R. Co.* (1914), 181 Ind. 202, 104 N. E. 16. We have examined and considered the evidence, having in mind the claimed errors thus presented, and are of the opinion that there is sufficient evidence disclosed by the record to justify the court's action in this regard and to require of the court in the proper discharge of its duties that it leave to the jury to determine as a fact whether the driver of the cab was negligent in the particulars specified.

Appellant called as one of its witnesses Lawrence F. Fisher, a physician and surgeon, who testified that his specialty was X-ray work, and that he, with his assistants, had made X-ray pictures of the shoulder and jaw of appellee; that some of the pictures of appellee's jaw were taken with the mouth open and a cork interposed between her teeth. It is contended by appellant that the court erred in sustaining objections made to the following questions asked of said witness, and in excluding the offered evidence sought to be elicited by such questions:

"Q. At the time of placing that cork or material in her mouth, did you palpate the left jaw or mandible?
"Q. Doctor, are you able to express an opinion of the nature and extent of disability, if any, in the jaw of the plaintiff?"

Appellant offered to prove that the witness, if permitted to answer the first question, would answer that in order to ascertain the direction from which the X-ray exposure should be made he did palpate the left mandible, and thereupon based his instruction to the technician, and that such palpation was necessary for the exposure. As

to the second question, the offer to prove was that the witness had formed an opinion, and that in his opinion the jaw is perfectly normal, without disability, and will not need an operation, and the "clicking condition" is perfectly normal so far as injury or trauma is concerned. It is to be noted that the offer to prove in each instance is much broader than a proper response to the question would require, but there are other reasons why no reversible error was committed by the court in this connection. This witness exhibited and explained to the jury a number of X-ray pictures of appellee's jaw, and his evidence covers the facts embraced in the offers to prove, and concerning which inquiry was made by the questions asked. We quote from the condensed recital of the witness' evidence as found in appellant's brief, as follows:

"Exhibits 'G,' 'H,' 'I,' and 'J' were taken of the lower jaw. Exhibit 'G' is the left side of the jaw showing the socket region. Exhibit 'H' is the right side. Exhibit 'I' is also the right side. Exhibit 'J' is a picture with the patient on her face with the rays directed from the back so as to show the side projection of the lower jaw. In the evening I took exhibits 'K,' 'L,' 'M,' and 'N'. . . . Exhibit 'K' shows the jaw closed. *It shows the socket of the right side of the lower jaw with a normal relationship.*

"Exhibit 'L' was taken with the mouth open and this one and one-fourth (1¼) inch cork interposed between her teeth. *This exhibit shows a freedom of movement of three-eighths (⅜) inch which shows normal range of mobility and no dislocation.* Exhibit 'M' is the left side taken with the mouth closed. Exhibit 'N' is the left side with the jaws open and the same cork interposed. *It shows the same degree of normal mobility as the right side. There is no irregularity of the head of either side of the jaw. There are no erosions. There are no pieces of bone that have been broken off. It is normal.* There are no lime deposits. . . . *There is nothing in the eight exhibits that indicates active or acute or chronic injury.* . . .

"If there was injury there would be a change in the joint; there would be a roughening of the bone surface and a decrease in the joint spaces. *The eight exhibits of the plaintiff's jaw do not show any appearance of fracture. It is normal. The left jaw joint was smooth, not rough or irregular. The left side is the same as the right."* (Our italics.)

It is also disclosed by the record that the court gave to the jury appellant's requested instructions 10 and 11, said instructions being as follows:

Instruction (10). "I further instruct you that there is no evidence in support of plaintiff's allegation that her jaw was dislocated in the alleged collision and therefore withdraw from your consideration this allegation of the complaint.

Instruction (11). "I further instruct you that if your finding be for the plaintiff, then in your consideration and determination of the question of damages you cannot allow any damage for any item which has been withdrawn·from your consideration by the court under these instructions."

Under such a state of the record we hold that no reversible error is shown in exclusion of the offered evidence of this witness.

On cross-examination, this same witness was asked the following question:

Q. "There could be a dislocation, and inflammation, and the part replaced in the socket or back in proper position and no evidence in the X-ray of any inflammation after eleven months?"

Appellant objected to this question on the ground that there was no evidence of dislocation or placing the jaw back into position, and the court overruled the objection and permitted the witness to answer, the answer given being "Yes." No error was committed in this respect, as the question was within the range of proper cross-examination.

Complaint is also made of the court's action in refus-

ing to admit in evidence defendant's exibits "B" and "C," said exhibits being photographs purporting to show the condition of the railroad track and planks on the street intersection where the collision between the two motor vehicles occurred. These exhibits had first been offered by appellee and excluded on the objection of appellant. It is contended by appellant that they were admissible in its behalf to explain the testimony and aid the jury. There is no contention made that the condition of the streets, insofar as the tracks and planking between them is concerned, had any connection with the cause of the accident, or any bearing upon the conduct of either of the drivers of the cars in collision, and we cannot see that the exclusion of these offered exhibits, under all the facts in the case, worked to the harm or prejudice of appellant so as to constitute error requiring reversal.

It is also urged that the judgment in this cause should be reversed because the damages assessed by the jury are excessive. There is evidence to prove that appellee at the time of her injury was 24 years of age; that she was a registered podiatrist and had been engaged in the business for several years; that when injured she was employed by one Dr. Bunch and received a salary of $80.00 per month, plus 2 per cent of the gross receipts, earning from $22.50 to $25.00 per week; that since her injury she earns $10.00 per week, and is unable to perform all the duties of a podiatrist. There is also evidence tending to prove that since the accident appellee is nervous, that she does not sleep well; that she continues to suffer pain and receive medical attention because of said injuries. It further appears from the evidence that as a result of the accident, appellee's body was bruised and cut in many places, the major bruises being on her shoulder and hip, and the major cuts on her chin, neck, cheek, and near her left

eye; that there were twenty-three cuts on her body; that one was a circular cut on her chin about five-eighths of an inch across, and that the circular piece of skin, immediately following the accident, was held to her chin by a "little pedicle" which was "cleaned" and "cleaned beneath" and stitched back in place; that there were several small cuts on her neck and one "marked cut" to the left of the "Adam's apple" which required stitching; that another cut extended "right across the camphus of her left eye" which required stitching; that after these cut healed, scars were left on her chin, neck and near her left eye, all of which are permanent. In view of the entire evidence we cannot say that the amount of compensation awarded is excessive and so out of line with reason and justice as to shock the conscience, nor is it apparent that any improper element was taken into consideration by the jury in determining the amount. In the first instance, it was the duty of the jury to pass upon the question. We must also take into consideration that the judge of the lower court had the opportunity to observe the conduct and appearance of the witnesses testifying in the cause, and was in a situation where he could best determine whether the verdict was subject to any improper influence, prejudice or partiality, and in passing upon the motion for a new trial that he had this question before him. In view of the entire record we are of the opinion that we should not disturb the judgment because of alleged excessive damages. See *Union Traction Company* v. *Morris* (1923), 193 Ind. 313, 136 N. E. 861; *Kenwood Tire Co.* v. *Speckman* (1931), 92 Ind. App. 419, 176 N. E. 29.

Instructions numbered 4, 6, and 19, tendered by appellee and given by the court, are challenged. In considering instructions given, and determining whether error in this connection has occurred, we must look to the entire charge given to the

jury, with the question in mind as to whether the jury was misled. *Livingston* v. *Rice* (1933), 96 Ind. App. 176, 184 N. E. 583; *Southern Indiana Gas & Electric Co.* v. *Storment* (1934), 206 Ind. 25, 188 N. E. 313.

Instruction number 3, given by the court immediately prior to the giving of instruction number 4, told the jury that at the time of the alleged injuries to appellee there was in full force and effect in this state a statute with reference to the speed of automobiles, and then set forth that portion of section 10140, Burns' Ann. Ind. Stat. Supp. 1929, §47-516, Burns 1933, §11169, Baldwin's 1934, pertinent to the issues and evidence in the cause, and instruction 4, of which complaint is made, is as follows:

"With reference to the statute I have just given you, I instruct you that if you find by a fair preponderance of the evidence that the defendant at the time the alleged injuries in question occurred, was driving and operating its automobile cab by its agent, chauffeur and servant, while in the due scope of his employment, on a public street and highway in the city of South Bend, Indiana, where the same passes through a residence portion of said city of South Bend, Indiana, at a speed greater than Thirty (30) miles per hour, then I instruct you that such speed, if any, should be by you considered as *prima facie* evidence that the defendant was driving and operating its automobile cab at a greater speed than was reasonable or prudent, having regard to the width of the highway, the density of the traffic, the condition of the weather and the use of the highway, or so as to endanger the life or limb or injure the property of any person.

*"This simply means that in absence of all other evidence,* the evidence of speed in excess of Thirty (30) miles per hour under the conditions named may be considered as a speed greater than is reasonable or prudent, having regard to the width of the highway, the condition of the weather, the density of the traffic, and the use of the highway or so as to endanger the life or limb or injure the property of any person.

*"However, it is for you to determine from all the evidence in the case whether or not the defendant was driving its automobile cab at a speed in excess of Thirty (30) miles per hour and whether such speed was negligence under the circumstances."* (Our italics.)

Appellant insists that this instruction is erroneous in that it necessarily permitted the presumption to be considered and weighed as evidence against the evidence to show the non-negligent operation of the cab; that it failed to inform the jury that the presumption was merely a temporary inference of fact which is dissipated the instant any testimony is taken against it. The instruction, however, does inform the jury that the statutory provision making thirty miles an hour in the residence portion of a city *prima facie* evidence of a greater speed than was reasonable or prudent, etc., means only that in the absence of all other evidence, evidence of a rate of speed in excess of thirty miles an hour may be considered by the jury as evidence of speed greater than is reasonable or prudent, but leaves it to the jury to determine from all the evidence in the case whether or not appellant's servant was driving the cab at a speed in excess of thirty miles per hour, and whether such speed was negligence under the facts proven. When this instruction is considered in connection with instruction number 32, tendered by appellant and given by the court, it seems apparent that the jury could not have been either confused or misled by its giving.

Instruction number 6 relates to the duty of the driver of a motor vehicle in approaching an intersecting highway, or a corner in the highway where the operator's view is obstructed, and appellant says this instruction should not have been given because it was applicable only to the second specification of negligence alleged in the complaint, and that there was no evidence to support the allegations of the complaint in regard to this par-

ticular claimed negligence. We have heretofore in this opinion held that there was sufficient evidence in the cause to justify the court below in its refusal to withdraw this question from the jury, and the instruction questioned was applicable both to the issues and the evidence.

Instruction number 19 is as follows:

"I instruct you, gentlemen of the jury, that when a driver of a motor vehicle who is approaching a street or a highway intersection, even though he arrives at the intersection at the curb line first, sees a vehicle approaching from his right and near enough so that there is reasonable probability that a collision will occur if both proceed, then it is the duty of such driver to yield the right of way to the one approaching from the right."

Appellant contends that this instruction in effect directed the verdict against it, and therefore invaded the province of the jury, and argues that the facts that a collision did occur is evidence that there was reasonable probability of its occurrence. If this instruction stood alone as the sole instruction given on this particular phase of the case, it would reasonably be subject to criticism as not being sufficiently definite because of the omission of elements of relative speeds, and other matters having a bearing on the question of negligence. However, instructions numbered 35 to 41, inclusive, tendered by the appellant, and given by the court, relate to this subject matter, and completely and correctly instruct the jury concerning the law applicable.

We are of the opinion that no reversible error is shown, and that the court properly overruled appellant's motion for a new trial.

Judgment affirmed.