NELSON, Appellant, vs. SHAW, Respondent.

*February 1 — February 21, 1899.*

*Master and servant: Personal injuries: Unsafe way: Promise to repair:*
*Contributory negligence.*

1. In an action for personal injuries, plaintiff's testimony tended to prove that he was employed by defendant to haul tan bark with a bob-sled over a private way of defendant, in which was a hole about eighteen inches deep, one and one-half feet wide, and three feet long, situated at the foot of a hill rising about eleven feet in a distance of 105 feet; that while plaintiff, sitting on a load of bark not·confined on the rack nor bound on in any way, with the soles of his boots even with the front end of the load, and nothing for his feet to brace against, was descending such hill, the front bob was precipitated into the hole, and plaintiff thrown off the load and injured; that plaintiff knew of the defect in the road, had passed over it on preceding days from eleven to thirteen times, and, on the evening before the accident, had notified defendant's foreman of the defect and of his purpose to quit unless the defect was repaired; that thereupon the foreman had promised him that the defect should be repaired before he came out over the road the next morning; that plaintiff passed the place the next morning at 7 o'clock and noticed that the defect had not been repaired, but on his return with a load did not ascertain whether the defendant had redeemed his promise, but drove over the defective way and was injured. Defendant's witnesses denied the existence of the defect. *Held,* that it was error to direct a verdict for defendant.

2. If defendant expressly promised to repair the defect before plaintiff returned with his load, the plaintiff under the circumstances was not precluded by any rule of law from relying on such promise.

3. The testimony did not show that the defect was so imminently dangerous as to make it contributory negligence *as a matter of law* for the plaintiff to drive down the hill without first ascertaining whether the defendant had redeemed his promise to repair.

4. Whether plaintiff, in driving down the hill while sitting on the load as above stated, was guilty of such contributory negligence as would defeat his claim, was a question for the jury.

APPEAL from a judgment of the circuit court for Taylor county: JOHN K. PARISH, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Frawley, Bundy & Wilcox,* and oral argument by *R. P. Wilcox.*

For the respondent there was a brief by *Losey & Woodward,* and oral argument by *G. M. Woodward* and *B. B. Park.*

CASSODAY, C. J.   This action was commenced September 4, 1897, to recover damages for personal injuries sustained January 25, 1895, by the plaintiff, while in the employ of the defendant as a teamster hauling tan bark from the lands described, for a distance of about eight miles, to the defendant's tannery at Rib Lake, by reason of an alleged defective private branch roadway provided and used by the defendant and his employees in hauling such bark.   Issue being joined and trial had, the court, at the close of the testimony, directed a verdict in favor of the defendant, and from the judgment entered thereon the plaintiff brings this appeal.

It appears and is undisputed that this branch roadway was built to get the bark to the main road, and was from one half to three fourths of a mile in length; that from the point where it connected with the main road it ran in a northeasterly direction, and was known as the "Mud Lake branch;" that the portion of the roadway in controversy extended from its junction with the main road northeasterly; that at a point some fifteen to thirty-five feet from its junction with the main road this bark roadway began to ascend a hill for a distance of about 105 feet; that the descent in that distance was a few inches less than eleven feet.

There is evidence tending to prove that at or near the foot of such descent there was a ditch and gully which existed in the traveled track, and extended at right angles to the traveled track; that the ditch and gully were partially concealed from the plaintiff by a log; that the front bob of the sleigh was precipitated into the ditch and gully with a quick, sharp jolt and plunge, and the plaintiff was violently thrown

Nelson vs. Shaw.

off the load, and injured; that the plaintiff had had considerable experience working in the woods, building logging roads, hauling logs and bark; that he had put in logs and repaired roads for that purpose; that he began to haul bark for the defendant November 22, 1894, and, after working continuously in hauling on other roads, began to haul bark on this Mud Lake branch six or seven days prior to the injury; that during that time he had passed over this road from eleven to thirteen times,— the last time about 7 a. m. of the day on which the accident happened, and that time particularly observed its condition; that on the evening before the accident the plaintiff told defendant's foreman about the existence of the hole at the bottom of the hill, and that it was dangerous, and that he would quit work if the defendant did not fix the road; that the foreman then said he would have it fixed; that the plaintiff then asked him when he would do so, and he then promised that he would have it fixed before the plaintiff came out with another load the next morning; that on the morning in question several teams were driven on this road, loaded with bark; that the leading team — Knickerbocker's — was delayed at or near the intersection of the bark road with the main road by having its load, or part of it, fall off, which compelled the teams behind it to wait until it could be reloaded; that the plaintiff's team stopped for this reason just at the top of the hill described as being 105 feet long; that the plaintiff fastened his team at that place, and went across the lots to a shanty, to get a lunch, while waiting; that he remained there fifteen or twenty minutes, and returned the same way to his team; that he did not walk down the hill to the place where the men were reloading Knickerbocker's sleigh; that there was nothing on the side of the rack to hold it in place; that it was not bound on in any way; that the plaintiff sat on the middle of the load, with the soles of his boots even with the front end of the load, when the accident occurred.

The question recurs whether the court was justified in taking the case from the jury. There is testimony tending to prove that the hole was about eighteen inches deep and one and one-half feet one way and some three feet the other way; and in fact that there were two holes near each other. The defendant's testimony tends to prove that there was no hole in or alongside of the road; that the only depression in the surface of the road was a creek running directly across it, not far from the bottom of the hill, in which the water was at times fourteen inches deep, and that this creek was frozen solid at the time in question, and that the ice and snow made the road perfectly level at that place. Of course, on this appeal, we must assume the evidence most favorable to the plaintiff to be true and undisputed. *Kaples v. Orth*, 61 Wis. 531. Upon such assumption two questions present themselves for consideration. The first is whether the plaintiff, after having passed over the road so many times, and knowing all about the alleged defect, did not assume the risk. We are all clearly of the opinion that he did, up to the time when the defendant expressly promised to repair the defect the next morning and before the plaintiff would return with another load. Counsel contend that the plaintiff had no right to rely on such promise, but should have repaired the defect himself. This is put upon the theory that the repairing of the defect was not a matter of which the plaintiff had little or no knowledge, but a matter of ordinary labor, with which he was entirely familiar, like certain cases cited. *Corcoran v. Milwaukee G. L. Co.* 81 Wis. 191; *Showalter v. Fairbanks, M. & Co.* 88 Wis. 376; *Marsh v. Chickering*, 101 N. Y. 396. But we do not understand that the plaintiff's duty required him to repair the defect. If the defendant expressly promised to repair the defect before the plaintiff returned with his load, then we perceive no rule of law which precluded the plaintiff from relying on such promise. *Ferriss v. Berlin Machine Works*, 90 Wis. 541; *Patterson v. P. & C. R. Co.* 76 Pa. St. 389; *Wust v. Erie City Iron Works*, 149

Pa. St. 263; *Illinois S. Co. v. Mann*, 170 Ill. 200; *S. C.* 40 L. R. A. 781.   Nor was the defect so imminently dangerous as to make it contributory negligence, as a matter of law, for the plaintiff to undertake to drive down the hill without first ascertaining whether the defendant had redeemed his promise to repair.   *Burnell v. West Side R. Co.* 87 Wis. 387; *Schultz v. C. C. Thompson L. Co.* 91 Wis. 626; *Jensen v. Hudson S. Co.* 98 Wis. 73; *Curran v. A. H. Stange Co.* 98 Wis. 598.

The most serious question in the case is whether the plaint-. iff was not guilty of contributory negligence, as a matter of law, in driving down the hill while sitting on the load with the soles of his boots even with the front end of the load, and hence with nothing for his feet to brace against.   But upon the whole evidence we are constrained to hold that the question of contributory negligence was for the jury.   *Kenworthy v. Ironton*, 41 Wis. 647; *Simonds v. Baraboo*, 93 Wis. 40.

The appellant's brief is unnecessarily long, and does not comply with the rules, and hence only thirty-five pages of it should be taxed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.