# PUBLIC SERVICE COMPANY OF INDIANA, INC. *v.* DALBEY

[No. 17,792. Filed April 19, 1949. Rehearing denied
June 3, 1949. Transfer denied October 27, 1949.]

408

On Petition for Rehearing. *Petition denied.*

*Branigan & Branigan,* of Franklin; and *William P. Evans;* and *Owen S. Boling,* both of Indianapolis, for appellant.

*Gilbert Butler,* of Martinsville; and *Elmon M. Williams,* of Indianapolis, for appellee.

MARTIN, J.—This action was by appellee against appellant to recover for injuries received from an explosion of natural gas.

The complaint alleges negligence on the part of appellant in the installation and maintenance of gas lines as being the cause of the gas escaping into the basement of appellee's house.

The appellee on November 8, 1944, lived on highway No. 37 about one mile southwest of Martinsville, Indiana. The appellant's high pressure six inch main is along the north side of said highway on the same side of the highway as the appellee's house. Natural gas accumulated under appellee's house, and in the basement from a leak from appellant's high pressure line, and was ignited when the appellee turned off an electric switch in the basement, and an explosion followed, blowing the side out of the house, and the building was immediately consumed by fire, and the appellee was severely burned about the hands, arms, face, neck and back, and was scarred, and his appearance marred, and some of said injuries are permanent.

The evidence further showed on the arrival of neighbors the next morning after the explosion the night before, gas was escaping from the ground, and between cracks in the concrete, between the main and the foundation of the house, and between the cracks in the concrete floor inside the foundation wall of the house. The appellant was called and their employees came and dug down to the main where the connection comes into the house and found a leak at said service connection where the saddle is a part of the fittings on the gas main. A gasket in the saddle was cracked and the high pressure gas forced an opening through this defective gasket. The life of the saddle is indefinite or more than 15 years as shown by the evidence. The connections between the pipe line to the dwelling of the appellee were loose as shown by the evidence.

The only error assigned and relied on for reversal was the trial court's overruling appellant's motion for a new trial.

The following questions are raised by the appellant under this assignment of error:

1. The appellant contends that the giving of court's instruction No. 11 was reversible error.
2. The verdict of the jury is not sustained by sufficient evidence.
3. The verdict of the jury is contrary to law.
4. The court erred in excluding from the evidence in this cause defendant's exhibits No. 6 and No. 5.
5. The refusal to give appellant's requested instruction No. 1A.
6. The appellant contends that the damages are excessive.

Error is predicated by appellant upon the giving of Instruction No. 11 by the court of its own motion. The court gave the following instruction:

"No. 11

"Negligence and carelessness, applied to both plaintiff and defendant, means the failure to exercise ordinary care, that is such care as ought to be expected of a reasonably prudent person under similar circumstances."

Appellant objects for the reason that the instruction used 'ought to be expected' and required that the defendant be held to the exercise of a greater duty than ordinary care under the circumstances defined by law.

In the case of *Curran* v. *A. H. Stange Co.* (1898), 98 Wis. 598, 74 N. W. 377, the court had before it an instruction using the word 'ought' for consideration. The court said "it is quite apparent that 'would' is a strictly proper word but was it error to use the word 'ought'? We think not.

". . . It will be found frequently used in the text books and decisions as a proper word in this connection, and as the equivalent of 'would,' and we do not regard its use under the circumstances here as prejudicial."

It has been determined by the court numerous times that the giving or refusing to give an instruction not mandatory in form is not prejudicial, where the given instructions as a whole state the law fairly and properly instruct the jury. *Griffith, Exr.* v. *Thrall, Admr.* (1941), 109 Ind. App. 141, 29 N. E. 2d 345; *Prudential Insurance Co.* v. *Martin* (1936), 101 Ind. App. 320, 196 N. E. 125; *State* v. *Coridan* (1943), 221 Ind. 404, 407, 47 N. E. 2d 978; *Bain, Admx.* v. *Mattmiller* (1938), 213 Ind. 549, 554; 13 N. E. 2d 712; *Gatewood, et al.* v. *Lynch* (1939), 107 Ind. App. 168, 23 N. E. 2d 289; *Carter* v. *Aetna Life Ins. Co.* (1940), 217 Ind. 282, 288, 27 N. E. 2d 75.

Instruction No. 11 left it for the jury to consider the conditions and circumstances disclosed by the evidence

in determining what action would have been taken or avoided, what precaution should have been employed, and what course of conduct should have been pursued in order to measure up to the duty of due care. *Union Traction Co.* v. *Berry, Admr.* (1919), 188 Ind. 514, 124 N. E. 737.

Instruction No. 9 given by the court of its own motion is as follows:

"This action is based on negligence and it is therefore necessary that the Court define negligence to you in these instructions.

"Negligence is the doing of something which an ordinarily careful and prudent person would not do under the circumstances of the case, or the failure to do something which an ordinarily prudent person would do under the circumstances of the case, when there is a duty not to act or to act, as the case may be. In other words, negligence is the violation of a duty to exercise ordinary care, that is, such care as a person of ordinary prudence under the particular circumstances is presumed to exercise to avoid injury." (T. p. 72, Appellant's Brief p. 41.)

Instruction No. 11, when considered together with Instruction No. 9, if inept in any particular, was harmless to appellant.

While Instruction No. 11 is not phrased in the usual and orthodox language, considering said instruction in connection with the other instruction, we find no error therein.

We are called upon to say whether the evidence as disclosed by the record is sufficient to sustain the verdict of the jury and the ruling of the lower court on the motion for a new trial.

In that consideration, we are not concerned with the conflicting evidence or with the weight thereof, but only in determining whether there is an entire absence of proof of any of the facts necessary to be established.

The evidence disclosed that the appellant owned, installed, and had exclusive control of the high pressure gas main which carried a 200 pound pressure per square inch, together with the saddle and gasket where the leak occurred. The gas main was 14′ 8″ in front of appellee's house and about 2½ feet under the surface. Two weeks prior to the explosion, an employee of appellant was looking for a leak in the gas main near where the leak was discovered. The leak in the gas main permitted the gas to permeate the entire area; that the type and nature of the soil was such as to permit the gas easy access under the house and to the basement; that the cement apron extended from the highway to the house and covered a portion of the high pressure main; that the surface of the front yard had been covered with clay from the hills; that a gas explosion creates a hot flash and ignitable substances are ignited; that this was a gas explosion caused from the leak in appellant's gas main.

There was a witness, one R. N. Harger, called as a witness on behalf of the appellee who qualified as an expert witness and the following questions were asked and answers given by said witness without any objections on the part of appellant.

"Q. If, on the evening of the explosion, the plaintiff herein went into the basement and on his way out turned and faced what we will then call the south, faced this direction; assume the stairway is in this portion here; turned off the electric light and at that moment the facts as you now know them and keeping in mind the inspection you made, the nature of the machinery you have inspected, do you have a notion as to the cause of that explosion.

"A. I do.

"Q. What was the cause of that explosion?

"A. In my opinion, based on an inspection of these premises day before yesterday and the circumstances and conditions of this house as related to me, it is my opinion that the explosion was from gas leaking from this main out in this highway.

"Q. I will ask you if an explosion of that type, and assume that it was caused by natural gas, would it be apt to cause a fire sufficient to destroy the dwelling, assuming it was a frame dwelling?

"A. Yes. The moment of the explosion there was a very hot fire. I really feel it would burn anybody who was in that zone. (T. p. 290, l. 19 to p. 291, l. 12.)"

The evidence clearly establishes, that the damage complained of was not caused by an explosion of fumes from gasoline or some other liquid inflammable substance as contended by appellant's counsel.

Counsel for the appellant very strongly urge that the crack in the gasket was itself caused by the explosion, but we cannot say the evidence leads inescapably to that conclusion.

The record is voluminous. The oral testimony covers over six hundred typewritten pages.

It will therefore be impossible to discuss in detail the testimony of each witness, although it has been carefully considered in connection with the able briefs and oral arguments of counsel representing the respective parties.

We are of the opinion that the record discloses sufficient evidence to sustain the verdict of the jury.

The negligence which was alleged to constitute the basis of the action in the following language: "The defendants were negligent in the following respects and each of them:

"(a)  In improperly attaching the service pipe line to defendant's dwelling by failing to properly fasten the pipe to the valve and the gas main and in installing the same in such a manner as to allow the gas to escape from said pipe line at said point.

"(b)  In failing to maintain its main and service line in such a manner as to prevent the escape of gas into plaintiff's dwelling."

The appellant contends that paragraph (b) does not allege actionable negligence.

This paragraph is equivalent to saying that if appellant had not been negligent, if it had used reasonable care in its maintenance, gas would not have escaped.

The appellant did not present to the trial court a motion to make the complaint more specific and that the pleader be required to state facts necessary to sustain the conclusions of fact contained therein as provided by § 2-1005, Burns' 1946 Replacement. In the absence of such motion all objections on account of the pleadings of conclusions of fact are waived. *Terre Haute Union Transfer & Storage Co.* v. *Picket* (1938), 106 Ind. App. 82; 15 N. E. 2d 765, 16 N. E. 2d 778.

This court will not reverse a judgment, in whole or in part, for any defect in a pleading which, by law, might be amended by the court below, but such defect shall be deemed to be amended in the court of appeal, nor shall any judgment be stayed or reversed, in whole or in part, where it shall appear to this court that the merits of the cause have been fairly tried and determined in the court below. *Hennessey* v. *Breed, Elliott & Harrison* (1931), 92 Ind. App. 165, 176 N. E. 251; *Wise* v. *Curdes* (1942), 219 Ind. 606, 40 N. E. 2d 122; *Horwitz Bros.* v. *Dedloff* (1923), 80 Ind. App. 388, 141 N. E. 85.

In action for injuries plaintiff is required to prove only one of separate acts of negligence charged in his complaint in addition to proof of other facts necessary to entitle him to recover. *Gatewood, et al.* v. *Lynch* (1939), 107 Ind. App. 168, 23 N. E. 2d 289.

The question of negligence in such a case depends on whether the gas company exercised that degree of care and caution that an ordinary careful and prudent person similarly surrounded and situated would have exercised, and such question is ordinarily one of fact for the jury. *Southern Indiana Gas Co.* v. *Tyner* (1912), 49 Ind. App. 475, 97 N. E. 580.

Where facts may be reasonably subject to different inferences and conclusions the question of whether negligence is shown is for the jury. *Indiana Union Traction Co.* v. *Love* (1913), 180 Ind. 442, 99 N. E. 1005; *Rush* v. *Hunziker* (1940), 216 Ind. 529, 24 N. E. 2d 931; *Dulin* v. *Long* (1944), 115 Ind. App. 94, 54 N. E. 2d 652.

Courts take judicial knowledge of the fact that natural gas is a highly inflammable and explosive substance. *Indiana Natural Gas and Oil Co.* v. *Jones, et al.* (1895), 14 Ind. App. 55, 42 N. E. 487; *Jamieson* v. *The Indiana Natural Gas and Oil Company, et al.* (1891), 128 Ind. 555, 28 N. E. 76, (12 L. R. A. 652) ; *The Mississinewa Mining Co.* v. *Patton* (1891), 129 Ind. 472, 23 N. E. 1113.

There was no evidence disclosed by the record that the appellee had any knowledge of the leak of gas.

We are of the opinion that the question of whether appellee was guilty of contributory negligence that proximately contributed to his injuries was one of fact for determination by the jury. *Emge* v. *Sevedge* (1948), 118 Ind. App. 277, 76 N. E. 2d

687; *Pennsylvania R. Co.* v. *Sargent,* (1949), 119 Ind. App. 195, 83 N. E. 2d 793 and authorities therein cited.

The appellant next asserts, the court erred in excluding from the evidence, defendant's Exhibit 6 and 5. Exhibit 6 reads as follows:

## "ARTICLE OF SUBROGATION

"Proof 26609

"Dated at Martinsville, Indiana, November, 1944

"In consideration of One Thousand . . . . . and . . . No/100 ($1000.00) Dollars paid by THE GUARANTEE MUTUAL FIRE INSURANCE COMPANY under policy HNP-2351 for loss which occurred on November 8, 1944 to Dwelling and contents

"We do hereby assign, set over, transfer and subrogate to said insurer all the rights, claims, interest choses or things in action to the extent of amount above stated, which we may have against any party, person or corporation who may be liable for the loss, and hereby authorize the said insurer to sue, compromise or settle in our name or otherwise, and it is hereby fully substituted in our place, and subrogated to all our rights in the premises to amount so paid. Warranted no settlement has been made with the wrongdoer by the signer thereof.

"It is agreed that any action taken by said insurer shall be without charge or cost to us.

"Signed: Ollie Dalby

"Witness: C. A. Avery."

Exhibit No. 5 is a certified copy of the complaint filed by The Guarantee Mutual Fire Insurance Company as assignee against this appellant alleging the loss of the property insured, the payment of the loss by the in-

surer and the execution of his article of subrogation which is appellant's said Exhibit No. 6. Said exhibits were offered in support of appellant's third paragraph of answer.

The appellee's house and furniture were destroyed by fire, and the appellee was personally injured at the time of the explosion. Prior to the filing of this suit the appellee had collected One Thousand Dollars ($1000) from the insurance company which insured his house and furniture and he had made the assignment in question to the company. On August 16, 1946 the appellee commenced this suit against the appellant to recover for his personal injuries. The insurer commenced his action against the appellant during the September Term of 1946 and said suit is now pending. The question presented here is, whether one who suffered both personal injuries and property damage by reason of a single negligent act, and who assigned his property damage claim against the tort-feasor to a third person who prosecutes an action thereon against the tort-feasor, can prosecute an action to recover damages for his personal injuries arising out of the same accident.

Can we treat the property damage claim and the personal injury claim as separate causes of action? In the case of *Vasu* v. *Kohlers, Inc.* (1945), 145 Ohio St. 321, 61 N. E. 2d 707, the court quoted the majority rule on this question as follows:

"The rule at common law and in a majority of the states of the union is that damages resulting from a single wrongful act, even though they include both property and personal injury damages, are, when suffered by the same person, the subject of only one action against the wrongdoer . . . . (Authorities cited)

"The courts supporting this rule take the view that the cause of action arises out of the wrongful act of the defendant, disregarding as elements of a cause of action the multiple and variant rights of the plaintiff and the several items of damage suffered by him because of the wrongful act; that, since the tort-feasor's act is single, the cause of action must be single; and that the defendant's injuries occasioned by the wrongful act are merely multiple items of damages proceeding from the same wrong. 33 Yale Law Journal, 829.

"However, the English rule, which has been adopted in a number of state jurisdictions, affording a respectable weight of judicial authority in this country, is to the effect that injuries to both person and property suffered by the same person as a result of the same wrongful act are infringements of different rights, and give rise to distinct causes of action, with the result that the recovery or denial of recovery of compensation for damage to property is no bar to an action subsequently prosecuted for the personal injury, unless by an adverse judgment in the first action issues are determined against the plaintiff which operate as an estoppel against him in the second action. . . . (Authorities cited)

"The two-causes-of-action rule had its origin in the case of *Brunsden* v. *Humphrey, supra.* In that case defendant's van collided with plaintiff's cab resulting in damage to the cab and personal injury to plaintiff. Plaintiff sued defendant for injury to his cab. While the action was pending, a settlement was made by which the defendant paid for the damage done to the cab and the action was dismissed. Later, plaintiff sued the same defendant for his personal injuries and secured a verdict. On motion for new trial, the defendant contended that the plaintiff had but one cause of action and should have claimed all his damages in the first action and that when he accepted damages for the cab, further recovery was barred. The trial court set aside the verdict and rendered judgment for the defendant. On appeal, the Queens Bench Division, by a divided court, reversed the judgment and held that the plaintiff had two causes of action. The Master of

the Rolls, in his opinion, stated that the test is 'whether the same sort of evidence would prove the plaintiff's case in the two actions' and that, in the action relating to the cab, 'it would be necessary to give evidence of the damage done to the plaintiff's vehicle. In the present action it would be necessary to give evidence of the bodily injury occasioned to the plaintiff, and of the sufferings which he has undergone, and for this purpose to call medical witnesses. This one test shows that the causes of action as to the damage done to the plaintiff's cab, and as to the injury occasioned to the plaintiff's person, are distinct. . . . '

"A critical and analytical study of the two-causes-of-action rule will demonstrate that it is in harmony and keeping with the historical and logical development of the common law on that subject, and that it has not been interfered with by the provisions of the codes of civil procedure. The distinctions involved are most important because they involve not only the determination of what constitutes causes of action but the necessary relation of such causes of action to the doctrine of res judicata.

"The courts adopting this latter rule take the position that, first of all, the right of bodily security is fundamentally different from the right of security of property; and that the primary rights of the plaintiff to security to person and to property and the duty of the defendant not to infringe such rights are indispensable elements of causes of action for the wrongful invasion of such rights. The same courts also take the position that, in actions predicated upon a negligent act, damages are a necessary element of each independent cause of action and no recovery may be had unless actual consequential damages are shown. This is also true of tort actions for deceit, nuisance and defamation not libelous *per se*. The very gist of an action for negligence is the damages to person or property negligently inflicted. In negligence cases the wrong is complete only when damages are suffered. The act done is not wrongful in itself, but only becomes so when an injurious consequence follows. See 24 Harvard Law Review, 492."

Our legislature has recognized a distinction between the right to recover for injuries to property and those to the person. The statute of limitation for the filing of actions in personal injury cases is 2 years. Burns' 1946 Replacement, § 2-602. The statute of limitation for the filing of an action to personal property is 6 years. Burns' 1946 Replacement, § 2-601.

Actions for personal injuries do not survive the person injured, but the right of action for damages to personal property survives the person entitled to such action. Burns' 1946 Replacement, § 2-403; *City of Seymour* v. *Cummins, Administratrix* (1889), 119 Ind. 148, 21 N. E. 549.

The above mentioned statutes are consistent with the idea that a single wrongful act gives rise to two causes of action for different injuries, or injuries to different rights, such as are present in the cause under review.

Counsel for the appellant relies on the case of *City of North Vernon* v. *Voegler* (1885), 103 Ind. 314, 2 N. E. 821 as holding that Indiana has adopted the majority rule. We cannot agree. That case involves a principle not material in this case. It is clearly distinguishable in its facts.

We think an injury to person and an injury to property, resulting from the same tortious act, gives rights to two causes of action, and that appellee, as a result of the personal injuries received and the damages done to the house and furnishings had two separate causes of action—one, for personal injuries and one for property damage.

The appellant urges that the damages are excessive. The only evidence as to the question of damage was

produced by the appellee herein and the appellant offered no evidence in this respect and the appellee's evidence stands before the court uncontradicted. The appellee, in addition to losing much time on account of said injury has suffered much pain and according to the evidence has permanent injuries and his ability to earn money is necessarily permanently weakened. It is only where the damages are so outrageous as to strike every one with the enormity and injustice of them, so as to induce the court to believe that the jury must have acted from prejudice, partiality, or corruption before this court is authorized to interfere with the verdict on this ground. *Southern Indiana Gas Co.* v. *Tyner, supra; Louisville etc. R. Co.* v. *Kemper* (1899), 153 Ind. 618, 53 N. E. 931; *Hudelson* v. *Hudelson* (1905), 164 Ind. 694, 74 N. E. 504; *Cleveland, etc. R. Co.* v. *Hadley* (1908), 170 Ind. 204, 84 N. E. 13; *Chicago, etc. R. Co.* v. *Vester* (1911), 47 Ind. App. 141, 93 N. E. 1039; *Samuel E. Pentecost Const. Co.* v. *O'Donnell* (1942), 112 Ind. App. 47, 39 N. E. 2d 812; *Vandalia Coal Co.* v. *Yemm* (1911), 175 Ind. 524, 92 N. E. 49, 94 N. E. 881; *Goldblatt Bros., Inc.* v. *Parish* (1942), 110 Ind. App. 368, 33 N. E. 2d 835, 38 N. E. 2d 255; *Anthoulis* v. *Patiniotis* (1940), 108 Ind. App. 130, 27 N. E. 2d 375; *Yellow Cab Co.* v. *Kruszynski* (1935), 101 Ind. App. 187, 196 N. E. 136.

Taking into consideration, the age and habits of the appellee, the character of his injury, and his suffering on account thereof, its permanency, the extent of his disfigurement, and its influence on his earning capacity, this court can not see that the jury was influenced by anything other than the facts, and the law applicable thereto in assessing the amount of appellee's recovery.

The court did not err in overruling the appellant's motion for a new trial.

Judgment affirmed.

Royse, P. J., not participating.

## ON PETITION FOR REHEARING

MARTIN, J.—Appellant in its petition for rehearing has pointed out that the authority cited by this court in the original opinion of *Curran* v. *A. H. Stange Co.*, (1898), 98 Wis. 598, 74 N. W. 377, involved the interpretation of the word "ought" as used in an interrogatory rather than in an instruction as stated in the original opinion, which is correct.

However, the reasoning used by the Wisconsin court in setting forth that the word "ought" is considered as the equivalent to "would" in the textbooks and decisions is equably applicable to the use of such word in an instruction.

The appellant's petition for rehearing is denied.

NOTE.—Reported in 85 N. E. 2d 368.