URBAN *v.* REENTS.

[No. 18,283.  Filed June 13, 1952.]

*Charles S. Siferd,* of Monticello, for appellant.

*Lewis D. Dellinger,* of Monticello; *Vaughan & Vaughan, James E. Vaughan* and *Charles L. Vaughan,* all of Lafayette, for appellee.

MARTIN, J.—This is an appeal from a judgment in an action for damages for alleged personal injuries, brought by the appellee who sustained such injuries as a result of being struck by a motor vehicle operated by the appellant.

The issues were formed on appellee's complaint in one paragraph and appellant's answer in one paragraph. Appellant alleged he was without information as to the facts set forth in rhetorical paragraphs 3 and 4 and denied all other allegations of the complaint.

The cause was submitted to a jury which returned a verdict in favor of appellee and against appellant in the sum of $7,500 and judgment was rendered thereon.

The error assigned for reversal in this court is that the court erred in overruling appellant's motion for a new trial.

Seven specifications are set out in the motion as grounds for a new trial, one of said specifications being that a new trial should be granted for the reason the court erred in keeping and requiring the jury to deliberate said cause for an unreasonable length of time.

The second specification is that the court erred in refusing to discharge said jury after it had reported twice to its sworn bailiff that it was unable to agree upon a verdict. The third specification is that the jury was guilty of misconduct in the trial of said cause. These specifications one, two and three cannot be considered or reviewed as they are not properly presented.

Here the allegations appear in the motion for a new trial, but there is no bill of exceptions showing that these specifications were sustained by any evidence. It is well settled, that an affidavit supporting a motion for a new trial can only be brought into the record by a bill of exceptions, and that a motion for a new trial, though itself a part of the record, does not constitute evidence of the truth of the alleged causes for the motion, and this is so, even though the motion be sworn to or accompanied by affidavit in support of it. *Fletcher* v. *State* (1949), 227 Ind. 687, 88 N. E. 2d 146; *McCallister* v. *State* (1940), 217 Ind. 65, 26 N. E. 2d 391; *Soucie* v. *State* (1941), 218 Ind. 215, 31 N. E. 2d 1018; *Butler* v. *State* (1945), 223 Ind. 260, 60 N. E. 2d 137.

It is contended that the verdict is not sustained by sufficient evidence and is contrary to law, also, that the damage assessed by the jury is excessive, the amount of recovery being too large. Since only the sufficiency of the evidence is in question, these specifications will be considered together.

The evidence most favorable to the appellee discloses that on May 14, 1949, appellee was 66 years of age; that during the year preceding May 14, 1949, he worked at the golf course at the Country Club north of Monticello, Indiana, taking care of the course, mowing the greens and doing whatever had to be done there; that he received for such work 75 cents per hour

and averaged about $40 per week; that on May 14, 1949, appellee and his wife were driving home from Monticello; that appellee stopped at Dennie's Corner and his wife proceeded to drive the automobile on home by herself; that Dennie's Corner is a store, restaurant, and tavern. Appellee testified that he stayed in the tavern about an hour and a half, that he drank two beers and left for home about 9:30 P. M. The night was dark and dry; that he started walking home and was carrying five bottles of beer in a paper bag; that he was about two feet from the south edge of the pavement and saw no on-coming automobile nor no automobile back of him; that when he was about 250 feet west of Dennie's Corner he was struck by an automobile which knocked him down and he was unconscious for a little while; that when he became conscious he was on the south edge of the road, south of the automobile, which did not have any lights burning. The bottles of beer which he had been carrying were gone; that the boys in the automobile picked him up and took him home, one on each side of him giving him support. One of the boys was Will Urban and the other his younger brother, who lived about a mile and a quarter west of appellee's home and who had been friendly neighbors for sometime. Appellee testified that he had a big hole in his head, a hole in his chest and one in the muscle of his arm; that he had pain in his right leg below the knee; that the next morning he was taken to St. Elizabeth's Hospital at Lafayette, Indiana, where X-rays were taken, which X-rays disclosed that appellee had a broken bone in his right leg below the knee, his left collar bone was cracked and a couple of toes on his left foot were broken. His leg was put in a cast by Dr. Morris, which cast extended from the hip down to the foot, leaving the toes stick

out; that this cast was left on for approximately six weeks, three of which appellee remained in the hospital; that appellee's head healed; that his arm was put in a sling for a couple of weeks; that he had pain in his stomach and had no control over his bladder; that he did not have this trouble before this accident. Appellee further testified that his doctor bill had not been paid and that it amounted to approximately $128; that he had been unable to do any kind of work since the accident; that he was confined to his bed at home for six weeks after leaving the hospital; that he was compelled to use a wheel chair for a long time and also used crutches for a while; that his hospital bill was $185.00, which was paid by his wife; that appellee was able to file some saws, probably two saws per week, at 75 cents per saw, but has received no other wages since the accident; that he has tried to work in the yard but was unable to do so on account of pain in his back and hip; that his health has not improved a great deal since the accident. Appellee testified that other than the hospital and doctor bills he had purchased new glasses which cost $22.50; X-ray at the hospital, $20.00; X-ray at the hospital, $15.00; X-ray at the Clinic, $10.00; Laboratory fee at the hospital, $8.00; Medical expense at the hospital, $8.50; medicine at home $4.50; medicine at home $12.50 and care at home, $100.00; that altogether he has probably earned $50.00 from filing saws.

Dr. Warren V. Morris testified that he was called to the George Reents home about eleven o'clock one night and found Mr. Reents in bed, suffering from mild shock; he had a laceration on his left ear and complained of pains in different parts of his body, his left arm, his left foot and his right leg; that he also complained of being dizzy and he had lost a fair amount

of blood from his ear and the laceration on his scalp. Dr. Morris testified that he treated Mr. Reents for shock, cleansed his ear and scalp wound, gave him some morphine and that the bleeding had stopped when he left the Reents home that night; that on the next morning Mr. Reents was taken to St. Elizabeth's Hospital at Lafayette, where he was X-rayed, given some digitalis and tetanus antitoxin; that the X-rays revealed a fracture of his clavicle, which was painful; that his arm was put in a sling where it remained for two weeks; that the dressing on his ear was changed and kept sterilized. The X-rays also revealed a compressed fracture of the vertebra. He also had a fracture of the right fibula and a plaster cast was put on his leg which extended above his knee; that when he came down from the fracture room he went into a rather severe shock and appeared to be in a serious condition from the standpoint of life and death and at that time was given a narcotic. He remained in the cast for about six weeks. The great toe on his left foot was also fractured and the X-ray showed that the 11th dorsal vertebra was injured, which would be painful and the pain might increase after a week or ten days from the date of the accident. Dr. Morris further testified that in his opinion the compression of the vertebra in Mr. Reents' back is permanent; that he still has back discomfort, that his back is tender and painful and he complains of pain around his bladder; that he complains of having to get up nights, which is due to the nerves to the bladder being disturbed; that he doesn't get around very well and his body movement to the right is limited; that the injuries to the spine would prevent him doing the kind of work he did before the accident; that he will be unable to ride a tractor now;

that he might do light work but not such as he was engaged in before the accident.

It was stipulated by and between the parties that a man sixty-six years of age has an expectancy in life of 10.54 years.

William Edward Urban, Jr., the appellant, testified in substance that on May 14, 1949, he owned a 1936 Plymouth coupe; that on the date in question he had driven the car about 300 miles and had had no mechanical difficulties with said car; that on the evening of May 14, 1949, he, accompanied by his brother Jim, drove to Monticello and left his car at a filling station to be greased while they attended a show; that after the show they started home and on the way home stopped at Dennie's Corner around 9:30, parked the car on the north side of the building; that the head-lights were burning as they drove from Monticello to Dennie's Corner; they went inside Dennie's Corner and each got an ice cream cone which they took to the car and ate and then proceeded home. The headlights on the car were burning as they left Dennie's Corner but about 40 feet from the corner they went out, at which time appellant took his foot off the accelerator and the car coasted approximately 150 feet. The next thing he remembered was hearing a noise like bottles clinking to the pavement. He put on the brakes and stopped as quickly as he could and he and his brother got out of the car and found Mr. Reents lying on the pavement beside the wheel and on the hard portion of the road, about the middle of the road, with the left rear wheel touching him about the middle of his arm; that the car was on the north portion of the road, north of Mr. Reents' body. Appellant further testified that he and his brother stood Mr. Reents up and helped him home.

When they arrived at the Reents home Mr. Reents complained of his ear and shoulder paining and Mrs. Reents called the Doctor. Appellant testified that he called the sheriff who came and made a report of the accident and told appellant he could take his automobile home by using his spot light. The next morning appellant opened the hood of the car and noticed that a fuse had burned out and the car was taken to a garage where it was repaired. Appellant kept the car until March, 1951, and had no more trouble with the headlights after the accident.

We are of the opinion there is evidence from which the jury could and did resolve the issues of fact in favor of the appellee and this court will not weigh the evidence but will consider only the evidence most favorable in support of the verdict of the triers of the facts. *Hiatt* v. *Trucking, Inc., et al.* (1952), 122 Ind App. 411, 103 N. E. 2d 915; *Ayres* v. *Smith* (1949), 227 Ind. 82, 84 N. E. 2d 185; *Pearson Co.* v. *Cohen* (1949), 118 Ind. App. 699, 83 N. E. 2d 433; *Haynes* v. *Brown* (1950), 120 Ind. App. 184, 88 N. E. 2d 795.

The appellant urges that the damages are excessive. The evidence shows that Mr. Reents had medical, hospital and other expenses of approximately $500 and that he had a life expectancy of 10.54 years. The appellee, in addition to losing much time on account of said injuries, has suffered much pain and according to the evidence has permanent injuries and his ability to earn money is necessarily permanently weakened. It is only where the damages are so outrageous as to strike every one with the enormity and injustice of them, so as to induce the court to believe that the jury must have acted from prejudice, partiality, or corruption before this court is authorized to interfere with the verdict on this ground. *Public*

*Service Co. of Ind.* v. *Dalbey* (1949), 119 Ind. App. 405, 85 N. E. 2d 368, and authorities there cited.

Finding no reversible error, the judgment is affirmed.

NOTE.—Reported in 106 N. E. 2d 399.